**Robert McWILLIAMS, Plaintiff,**

v.

**LATAH SANITATION, INC. d./b./a. Moscow Recycling, Defendant.**

**No. 02–CV–455–C–EJL.**

United States District Court,
D. Idaho.

May 19, 2008.

Mark Mumford, Mabbutt and Mumford Attorneys, Pullman, WA, for Plaintiff.

Charles L. Graham, Landeck Westberg Judge & Graham, Moscow, ID, for Defendant.

## MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION

EDWARD J. LODGE, District Judge.

On March 5, 2008, United States Magistrate Judge Larry M. Boyle issued his Report and Recommendation in this matter. Pursuant to 28 U.S.C. § 636(b)(1), the parties had ten days in which to file written objections to the Report and Rec-

ommendation. Defendant filed its Objection to Report and Recommendation on March 13, 2008 (Docket No. 105). Plaintiff filed his response to the Defendant's objection on March 24, 2008 (Docket No. 106). Pursuant to 28 U.S.C. § 636(b)(1) this Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate. The Court has conducted a *de novo* review of the record in order to rule upon the objections of the Plaintiff.

Magistrate Judge Boyle found genuine issues of material fact exist regarding whether or not Plaintiff's physical impairments between February 17, 2001 and April 4, 2001 substantially limited any major life activities. Defendant Latah Sanitation, Inc. ("Latah Sanitation") objects to the Report and Recommendation not granting summary judgment in Defendant's favor. Specifically, Defendant argues Plaintiff Robert McWilliams ("McWilliams") does not have a record of disability as defined by the American with Disabilities Act ("ADA") and the duration of the alleged disability between February 17, 2001 and April 4, 2001 a short-term impairment that cannot as a matter of law rise to the level of a disability under the ADA. Plaintiff responds that Defendant misapplies the undisputed facts and while Plaintiff returned to work on April 4, 2001, he was still suffering from his impairment due to his heart attack. Plaintiff does not claim his disability was limited to February 17, 2001 to April 4, 2001, nor does he concede he was not disabled on the date of his termination, June 1, 2001. The remainder of the Report and Recommendation is not contested by the parties.

### Factual Background

The Court adopts the factual background set forth in the Report and Recommendation, Docket No. 104, pp. 2–4:

In August 1995, Plaintiff, Robert McWilliams, was hired as a warehouse worker by Moscow Recycling; Moscow Recycling is a subsidiary owned by Defendant, Latah Sanitation, Inc. Pl.'s Mot. for Summ. J., p. 2 (Docket No. 68). Plaintiff continued to work for Defendant until June 1, 2001. *Id.*

In January 1998, Plaintiff slipped and fell at work, breaking his leg. *Id.* After hospitalization and a period of recovery, Plaintiff returned to work in May 1998. *Id.* Following a subsequent corrective surgery in August 1998, Plaintiff again returned to work in February 1999. *Id.* at 2–3.

Relevant to this action, Plaintiff suffered a heart attack on February 17, 2001. *Id.* at 3. Six weeks later, Plaintiff's treating physician, Dennis Peterson, released him to return to work full-time and without restrictions. Pl.'s Resp. to RFA No. 4, attached as Ex. 1 to Second Dec. of Charles L. Graham (Docket No. 67). When Plaintiff returned to work on April 4, 2001, he resumed his normal duties, neither requesting nor receiving any special accommodations. Pl.'s Resp. to RFA No. 5, attached as Ex. 1 to Second Dec. of Charles L. Graham (Docket No. 67). By June 1, 2001—the date Plaintiff was terminated—he had been working full-time at Moscow Recycling for two months. Pl.'s Mot. for Summ. J., p. 6 (Docket No. 68). For the two months leading up to his June 1, 2001 termination, Plaintiff's physical condition had improved and his health had stabilized. *Id.*

Defendant's June 1, 2001 termination letter to Plaintiff reads:

Dear Mr. McWilliams:

It has come to my attention through a review of your attendance records that you have had an excessive number of absences, totaling 42 days in the past 6 months. We have been lenient and we have tried

to accommodate your needs, however, it has become apparent that you are no longer able to perform your job, even with the accommodations provided by Moscow Recycling.

As a result, we are choosing to sever the employer/employee relationship as of June 1, 2001. Enclosed is your final check for hours worked May 26, 2001 through June 1, 2001, as well as an additional $1,600.00 in severance pay and 8 accrued vacation days. Your medical insurance benefit with Blue Cross of Idaho has been paid through June 30, 2001.

It is with deep regret that we are no longer able to employ you. We wish you only the best in the future.

6/1/01 Ltr. from Lori Winn to Robert McWilliams, attached as Ex. 4 to Aff. of Robert McWilliams (Docket No. 68, Att. 2).

Plaintiff claims Defendant wrongfully fired him due to Plaintiff's disability which required him to be absent from work. Plaintiff claims discrimination under federal and state law, intentional and negligent infliction of emotional distress, and wrongful discharge. Plaintiff moves for summary judgment on his discrimination claims.

On the other hand, Defendant claims Plaintiff was not disabled and, therefore, was not wrongfully terminated from his at-will employment with Defendant. Instead, Defendant claims that Plaintiff was fired due to excessive absenteeism and a poor work ethic. Defendant requests summary judgment on all counts.

## Standard of Review

The Magistrate Judge correctly set forth the appropriate standards of review

for the motions addressed in the Report and Recommendation. Accordingly, the Court adopts by reference such standards of review.

## Analysis

■ Plaintiff alleges Latah Sanitation wrongfully terminated his employment due to his disability which required him to be absent from work for 42 days between February 17, 2001 and April 4, 2001 and such disability continued after he returned to work. In order to prevail on an ADA discrimination claim, an employee must show (1) that he was disabled within the meaning of the ADA; (2) that he was "qualified," meaning he was able to perform the essential functions of the job at issue, with or without a reasonable accommodation; and (3) that the employer terminated him because of his disability. *See Wellington v. Lyon County School Dist.,* 187 F.3d 1150, 1154 (9th Cir.1999). The term "disability" is defined in 29 C.F.R. § 1630.2(g):

> Disability means, with respect to an individual—
>
> (A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) A record of such an impairment; or
>
> (C) Being regarded as having such an impairment.

■ Only one of these parts must be satisfied for McWilliams to be considered an individual with a disability. 29 C.F.R. pt. 1630 app. § 1630.2(g). Judge Boyle evaluated Plaintiff's claims under subsections (A) and (B) since there is no evidence that Defendant regarded Plaintiff as having a disability.[1] *See* Report and Recommendation, pp. 1179–80.

---

1. As a matter of law, a person is "regarded" as being disabled for purposes of the ADA if "(1) a covered entity mistakenly believes that

a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly be-

■ The determination of whether a person has a disability under the ADA is an individualized inquiry. *Bragdon v. Abbott*, 524 U.S. 624, 641–42, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). The Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 487, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), held that "the ADA's coverage is restricted to only those whose impairments are not mitigated by corrective measures." "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Id.* at 482–83, 119 S.Ct. 2139. Thus, the analysis of whether a person is substantially limited in a major life activity and thus disabled under the ADA is evaluated in the person's corrective state.

■ It is undisputed that Plaintiff's insulin-dependent diabetes and heart condition qualify as "physical impairments." The question for this Court is whether the Plaintiff's physical impairments substantially limit one or more of Plaintiff's major life activities. The term "substantially limits" is defined in 29 CFR § 1630.2(j):

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general

population can perform that same major life activity.

Section 1630.2(j)(2) lists three factors to consider in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."

A. *Was Plaintiff suffering from a disability when he was terminated?*

While McWilliams argues in his response to Defendant's objection that he has not conceded he was not disabled when he was terminated and that Plaintiff does not claim that his disability was limited to February 17, 2001 to April 4, 2001. In reviewing the admissions of Plaintiff, his affidavit and his deposition testimony, the Court finds there is no evidence McWilliams was disabled on his termination date of June 1, 2001, but there is some evidence submitted by Plaintiff that he continued to suffer from the physical impairment due to his recovery from his heart attack when he first returned to work on April 4, 2001.

McWilliams admitted in his answers to interrogatories that he was released to work without restrictions by his doctor on April 4, 2001 and there were no further medical determinations he was disabled or restricted at work before he was terminated. Plaintiff admitted that prior to June 2001, he was able to control his diabetes

lieves that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); see also 29 C.F.R. § 1630.2(*l*)(1); *Deppe v. United Airlines*, 217 F.3d 1262, 1265 (9th Cir.2000) ("In 'regarded as' cases, the employer must perceive the individual as having an actual disability under the ADA.").

In this case, McWilliams presents no evidence that Latah Sanitation regarded him as having a physical impairment limiting any major life activities. While the employer was aware of Plaintiff's diabetes and heart attack, there is no evidence in the record that Defendant regarded Plaintiff's diabetes or heart condition as substantially limiting any major life activities.

with regular injections of insulin. Plaintiff also states in his affidavit that "[m]y diabetic condition has not affected my work at Latah Moscow Recycling. At times I have experienced fatigue and other minor symptoms attributable to my diabetic condition, but at no time did these symptoms affect my work performance." Affidavit of Robert McWilliams, Docket No. 21, p. 3, ¶ 10.

Plaintiff states in his affidavit that his doctors and therapists did not think he should return to work so soon, but allowed it reluctantly upon Plaintiff's insistence. However, the employer had no medical information other than the doctor's medical release to work without restrictions when Plaintiff returned to work.

Plaintiff admitted in his deposition that he was not restricted from work around his home, his mother's home or his rental property when he returned to work. Plaintiff admitted he worked 8 hour days after he returned to work on April 4, 2001 and generally performed his normal duties. In his affidavit, Plaintiff states that when he returned to work he had recovered sufficiently to work, but his heart condition remained uncorrected medically.

After he returned to work, Plaintiff maintains he "continued to suffer from shortness of breath, occasional dizzy spells and fatigue. I was limited in how much I could exert myself." Affidavit of Robert McWilliams, Docket No. 21, p. 6, ¶ 25. While Plaintiff admits he requested no accommodations from his employer, he does state he asked for and received informal help from his co-workers. *Id.* at ¶ 27. Finally Plaintiff states in his affidavit that as of June 1, 2001, he "was able to work and fully fulfill my responsibilities as a warehouse laborer." *Id.* at p. 7, ¶ 29.

There is no independent medical evidence or evidence testified to by Plaintiff that after he was released to work on April 4, 2001, Plaintiff continued to suffer from physical impairments that substantially limited his major life activities in order to be classified as a disability under the ADA. Nor does Plaintiff offer evidence that he was "substantially limited" from any major life activity even though he may have suffered from shortness of breath, dizzy spells and fatigue upon his initial return to work on April 4, 2001. Plaintiff testified he was able to maintain his home, his mother's home and his rental property before he was terminated.

Specifically, Plaintiff has failed to establish he was substantially limited from the major life activity of working after April 4, 2001. In fact, immediately after his termination the Plaintiff applied for unemployment benefits and represented he was available to work without restrictions.

■ The regulations define "working" as a major life activity. 29 C.F.R. § 1630.2(i). Federal regulations also provide that with respect to the major life activity of working, "substantially limited" means:

> [S]ignificantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). The question is not whether McWilliams is limited from being a warehouse laborer for the Defendant, but is he at a minimum, unable to work in a broad class of jobs. *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139.

The EEOC further identifies several factors that courts should consider in determining whether an individual is substantially limited in the major life activity of working, including the geographical area to which the individual has reasonable access, and "the number

and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." §§ 1630.2(j)(3)(ii)(A), (B). To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Id.* at 491–92, 119 S.Ct. 2139. Based on occupational evaluation as of April 4, 2001—June 1, 2001, the Plaintiff was capable of working in a broad class of jobs. Declaration of Debra Uhlenkott, Docket No. 17.

The mere presence of a physical impairment does not rise to the level of a disability under the ADA unless such impairment significantly limits a major life activity. Plaintiff has not established a genuine issue of material fact regarding whether a major life activity was substantially limited as of the date of his termination. Based on all the above reasons and especially the Plaintiff's own statement he was fully capable of doing his job on June 1, 2001, the Court finds that no reasonable juror could find that Plaintiff was suffering from a disability based on his diabetes or his heart condition for purposes of the ADA when he returned to work without restrictions and up until the date he was terminated. This objection of the Plaintiff is denied.

B. *Time Period from February 17, 2001 to April 4, 2001*

■ The Magistrate Judge concluded and this Court agrees that Plaintiff has provided sufficient evidence that during the period of February 17, 2001 to April 3, 2001, McWilliams' physical impairments prevented him from performing a variety of tasks central to most people's lives and that he was not cleared to return to work until April 4, 2001. It is, however, unclear from the record how long during the recovery period Plaintiff was unable to care for himself, perform manual tasks, walk, see, hear, breath, or learn. Certainly, right after he was released from the hospital Plaintiff appears to have been very limited in his activities, but the record is unclear if such conditions and limitations lasted up to April 3, 2001. Therefore, the argument becomes, since the employer specifically listed the 42 days of absenteeism in the last six months as the basis for termination, was the Plaintiff terminated due to a "disability" under the ADA that he suffered from the 42 days he was recovering from his heart attack. Stated another way, are there genuine issues of material fact regarding whether the Plaintiff's physical impairments between February 17, 2001 and April 4, 2001 "substantially limited" a major life activity?

Defendant maintains that the short term duration of the impairments (February 17, 2001 to April 3, 2001) keeps the physical impairments from qualifying as an impairment that substantially limits a major live activity as a matter of law. Defendant argues and several courts have agreed that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA. *See Sanders v. Arneson Products, Inc.,* 91 F.3d 1351,1354 (9th Cir.1996) (psychological impairment for approximately 106 days with no residual effects was not of sufficient duration to fall within the protections of the ADA as a disability); *Taylor v. Nimock's Oil Co.,* 214 F.3d 957 (8th Cir.2000) (heart disease recovery period did not qualify as substantial limitation on major life activity). The appendix to the regulations states that "temporary, non-chronic impairments of short

duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. pt. 1630 app., § 1630.2(j). The examples given of recoveries for impairments not rising to the level of a disability are "broken limbs, sprained joints, concussions, appendicitis, and influenza." *Id.* "Some conditions may be long-term or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, if severe, may constitute disabilities." 2 EEOC Compliance Manual, Interpretations, (CCH) § 902.4, ¶ 6884, p. 5319 (1995)

To begin with the Court finds the Plaintiff's diabetic condition does not rise to a level of a disability under the ADA as it did not substantially limit the major life activities of the Plaintiff. McWilliams' impairment due to diabetes is typically treatable with the use of insulin, so in the corrective state it does not appear that Plaintiff's long term condition of diabetes would qualify as an impairment that substantially limits a major life activity.

However, the Court will apply the three factors to be considered in determining if the heart attack recovery period of 42 days rises to the level of a disability in that a physical impairment substantially limits one or more of the major life activities. The three factors are: 1) nature and severity of impairment; 2) duration of impairment and 3) and the permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

The nature and severity of the heart condition are disputed in this case. Plaintiff maintains the heart attack required an intensive recovery that limited his activities and required extensive physical therapy. Moreover, Plaintiff argues that because his heart condition went uncorrected, the condition continued to be of a critical nature and severe. Defendant argues the severity was limited as Plain-

tiff returned to work without restrictions in six weeks.

The duration of the disability is also disputed. Plaintiff concedes he was out six weeks, but claims he was not 100% when he returned to work even though he was cleared for work without restrictions. Plaintiff maintains the disability continued past April 4, 2001. Defendant argues the duration to be considered by the Court must be limited to six weeks since McWilliams returned to work without restrictions or accommodations on April 4, 2001 and Plaintiff has provided no evidence that if he was limited in his activities when he returned to work that he was "substantially limited" as required by the ADA. Defendant also relies on Plaintiff's admission he was fully capable performing his duties at the time he was terminated to indicate the alleged disability under the ADA did not continue in its duration after Plaintiff returned to work.

The long term and permanent nature of the physical impairment due to the heart attack is also disputed by the parties. Plaintiff maintains his uncorrected heart condition differs his case from the short-term examples listed in the regulations such as influenza or a broken limb. Plaintiff argues his diabetes was affecting his kidney function so the bypass surgery he needed when he suffered the heart attack in February 2001 was still an issue when he returned to work. In fact, Plaintiff had bypass surgery in 2002 because the chronic heart disease worsened. Plaintiff argues this documented heart condition was a permanent and long-term condition until the cause of his heart attack could be treated with bypass surgery and is a completely different situation than in the examples of the regulations of recovering from a broken leg or the flu. Defendant submits Plaintiff was cleared to work without restrictions by his doctor, so there

were no long-term or permanent impairments based on the heart attack and the impairments he did suffer from were not the basis for his termination.

■ Because the employer cited the absenteeism from the recovery period as the reason for terminating McWilliams, the issue of whether or not Plaintiff was disabled during that time and the termination was based on the disability is an unresolved issue. The Court does not find as a matter of law that the 42 days of the absenteeism is dispositive of whether or not Plaintiff suffered a disability between February 17, 2001 and April 3, 2001. There is no set number of days that defines whether an impairment is or is not a disability under the ADA. Duration is but one factor for the Court to consider since the determination of whether an individual has a disability is an individualized inquiry. In this case all three of the factors to be considered by the Court are disputed by the parties.

While the Court agrees with the Magistrate Judge that several facts cut against Plaintiff's argument that he suffered a disability between February 17, 2001 and April 3, 2001, the Court is mindful of the case of *Katz v. City Metal Co., Inc.,* 87 F.3d 26 (1st Cir.1996) wherein the appellate court reversed the trial court's finding that the plaintiff had failed to prove he had a permanent disability resulting from his heart attack. In *Katz,* the employee was terminated before he was able to return to work after suffering a heart attack. The *Katz* court noted:

> As might reasonably be expected after any major trauma and resultant medical procedure or surgery, Katz's ability to breathe, walk and work was substantially limited in the period immediately following the heart attack and angioplasty procedures. This does not, however, necessarily lead to the conclusion that Katz had a disability. *See McDonald v.*

*Commonwealth of Pennsylvania,* 62 F.3d 92, 96 (3rd Cir.1995) (inability to work for two months following surgery not a disability).

87 F.3d at 31–32. Because the finding of a disability is an individual one, the Court finds there are genuine issues of material fact regarding this disability determination in this case and summary judgment cannot be granted in either parties' favor on this issue.

## C. Record of an Impairment That Substantially Limits a Major Life Activity

■ In the response to the objections, Plaintiff argues he had a record of disability based on his diabetes since Latah Sanitation was aware of his diabetic condition since 1996. In order to have a record of an impairment that substantially limits a major life activity means to have "a history of, or [have] been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *Coons v. Secretary of U.S. Dept. Treasury,* 383 F.3d 879, 886 (9th Cir.2004).

In this particular case, McWilliams provides evidence of his history of an physical impairment of diabetes and a heart condition. However, the medical records submitted do not indicate that the doctors found the heart attack was caused by his diabetes or that the diabetes substantially limited Plaintiff from any major life activity. In fact the doctor's medical release to return to work without restrictions supports a conclusion the impairments did not substantially limit Plaintiff from any major life activity after April 4, 2001. As discussed earlier, Plaintiff's own affidavit indicates his diabetes did not affect his work performance. Although Plaintiff maintains he has a record of the impairment impacting him after he returned to work, there is no evidence he was unable to do his work or any other major life activity after he

returned to work on April 4, 2001. Finally, there is no record of the health professionals mistakenly reported that Plaintiff's diabetic condition substantially limited a major life activity Therefore, any claim of a record of disability must be dismissed as a matter of law as Plaintiff has not shown a genuine issue of material fact exists as to this basis for determining disability under the ADA.

D. *Other Legal Claims*

The parties have not objected to the Magistrate Judge's findings on the other legal issues, therefore the Court adopts such analysis by reference.

Order

Acting on the recommendation of Judge Boyle, this Court's own analysis of the objections filed in this case and this Court being fully advised in the premises,

**IT IS HEREBY ORDERED:**

1. Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED in part and DENIED in part as follows:

a. As to Plaintiff's disability claim under the ADA, Defendant's Second Motion for Summary Judgment (Docket No. 64) is DENIED;

b. As to Plaintiff's disability claim under the IHRA, Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED;

c. As to Plaintiff's intentional infliction of emotional distress claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED;

d. As to Plaintiff's negligent infliction of emotional distress claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED; and

e. As to Plaintiff's wrongful discharge claim, Defendant's Second Motion for

Summary Judgment (Docket No. 64) is GRANTED.

2. Plaintiff's Motion for Summary Judgment (Docket No. 68) is DENIED;

3. Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike (Docket No. 70) is DENIED as moot;

4. Plaintiff's Motion to Strike Portions of Declaration of Lori K. Winn and Declaration of David Beyer (Docket No. 28) is DENIED as moot;

5. Plaintiff's Motion to Strike Declaration Statements by Lori K. Winn (Docket No. 71) is DENIED as moot;

6. Plaintiff's Motion to Strike Second Declaration Statements by Lori K. Winn Filed on October 23, 2006 (Docket No. 84) is DENIED as moot;

7. Defendant's Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 23) is DENIED as moot;

8. Defendant's Objection and Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 74) is DENIED as moot;

9. Plaintiff's Motion to Withdraw (Docket No. 91) is GRANTED; therefore, (1) Plaintiff's Motion to Strike Defendant's Responsive Motions/Documents and related Motion for Attorney's Fees and Costs (Docket No. 79), and (2) Second Motion to Strike Defendant's Response to Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike Filed October 19, 2006 (Docket No. 83) is withdrawn.

9. Each party to incur their own costs and fees.

10. The trial in this matter shall be set for August 19, 2008 at 9:30 a.m. at the Federal Courthouse in Coeur d'Alene, ID [2].

**2.** The parties are further advised that criminal matters may also be set on that date, which

## REPORT AND RECOMMENDATION

LARRY M. BOYLE, United States Magistrate Judge.

Currently pending before the Court are two underlying motions: (1) Defendant's Second Motion for Summary Judgment (Docket No. 64) and (2) Plaintiff's Motion for Summary Judgment (Docket No. 68). Several related motions are also currently pending before the Court, including: (1) Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike (Docket No. 70); (2) Plaintiff's Motion to Strike Portions of Declaration of Lori K. Winn and Declaration of David Beyer (Docket No. 28); (3) Plaintiff's Motion to Strike Declaration Statements by Lori K. Winn (Docket No. 71); (4) Plaintiff's Motion to Strike Second Declaration Statements by Lori K. Winn Filed on October 23, 2006 (Docket No. 84); (5) Defendant's Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 23); (6) Defendant's Objection and Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 74); (7) Defendant's Motion in Limine (Docket No. 32); and (8) Defendant's Second Motion in Limine (Docket No. 62).[1] Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Report and Recommendation:

## I. BACKGROUND

In August 1995, Plaintiff, Robert McWilliams, was hired as a warehouse worker by Moscow Recycling; Moscow Recycling is a subsidiary owned by Defendant, Latah

Sanitation, Inc. Pl.'s Mot. for Summ. J., p. 2 (Docket No. 68). Plaintiff continued to work for Defendant until June 1, 2001. *Id.*

In January 1998, Plaintiff slipped and fell at work, breaking his leg. *Id.* After hospitalization and a period of recovery, Plaintiff returned to work in May 1998. *Id.* Following a subsequent corrective surgery in August 1998, Plaintiff again returned to work in February 1999. *Id.* at 2–3.

Relevant to this action, Plaintiff suffered a heart attack on February 17, 2001. *Id.* at 3. Six weeks later, Plaintiff's treating physician, Dennis Peterson, released him to return to work full-time and without restrictions. Pl.'s Resp. to RFA No. 4, attached as Ex. 1 to Second Dec. of Charles L. Graham (Docket No. 67). When Plaintiff returned to work on April 4, 2001, he resumed his normal duties, neither requesting nor receiving any special accommodations. Pl.'s Resp. to RFA No. 5, attached as Ex. 1 to Second Dec. of Charles L. Graham (Docket No. 67). By June 1, 2001—the date Plaintiff was terminated—he had been working full-time at Moscow Recycling for two months. Pl.'s Mot. for Summ. J., p. 6 (Docket No. 68). For the two months leading up to his June 1, 2001 termination, Plaintiff's physical condition had improved and his health had stabilized. *Id.*

Defendant's June 1, 2001 termination letter to Plaintiff reads:

Dear Mr. McWilliams:

It has come to my attention through a review of your attendance records that

would supersede all civil settings; however, civil matters would commence in the order set at the conclusion of any criminal proceedings, if time allows.

**1.** On November 14, 2006, Plaintiff moved to withdraw his (1) Motion to Strike Defendant's Responsive Motions/Documents and related

Motion for Attorney's Fees and Costs (Docket No. 79) and (2) Second Motion to Strike Defendant's Response to Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike Filed October 19, 2006 (Docket No. 83). *See* Mtn. to Withdraw, pp. 1–2 (Docket No. 91). Plaintiff's Motion to Withdraw is granted.

you have had an excessive number of absences, totaling 42 days in the past 6 months. We have been lenient and we have tried to accommodate your needs, however, it has become apparent that you are no longer able to perform your job, even with the accommodations provided by Moscow Recycling.

As a result, we are choosing to sever the employer/employee relationship as of June 1, 2001. Enclosed is your final check for hours worked May 26, 2001 through June 1, 2001, as well as an additional $1,600.00 in severance pay and 8 accrued vacation days. Your medical insurance benefit with Blue Cross of Idaho has been paid through June 30, 2001.

It is with deep regret that we are no longer able to employ you. We wish you only the best in the future.

6/1/01 Ltr. from Lori Winn to Robert McWilliams, attached as Ex. 4 to Aff. of Robert McWilliams (Docket No. 68, Att. 2).

Plaintiff claims Defendant wrongfully fired him due to Plaintiff's disability which required him to be absent from work. Plaintiff claims discrimination under federal and state law, intentional and negligent infliction of emotional distress, and wrongful discharge. Plaintiff moves for summary judgment on his discrimination claims.

On the other hand, Defendant claims Plaintiff was not disabled and, therefore, was not wrongfully terminated from his at-will employment with Defendant. Instead, Defendant claims that Plaintiff was fired due to excessive absenteeism and a poor work ethic. Defendant requests summary judgment on all counts.

## II. STANDARD OF REVIEW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983); Fed.R.Civ.P. 56(c). An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Auto. Indus. Welfare Fund,* 882 F.2d 371 (9th Cir.1989).

Moreover, the Supreme Court has made it clear that under Rule 56, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other

facts immaterial." *Id.* at 323, 106 S.Ct. 2548.[2]

Thus, according to the Ninth Circuit, if the moving party meets its initial burden, then the nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib.*, 882 F.2d at 374 (citation omitted).

Of course, when applying the above standard, the Court must view all of the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hughes v. U.S.*, 953 F.2d 531, 541 (9th Cir.1992). "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987); *Anderson*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (motion for summary judgment must be denied when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**2.** *See also*, Rule 56(e) which provides, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropri-

# III. ANALYSIS

## A. The Parties' Cross–Motions for Summary Judgment (Docket Nos. 64 and 68)

The common question among the parties' respective motions for summary judgment centers on the existence of a recognized disability under applicable federal and state laws. While this is the focus of Plaintiff's motion for summary judgment, Defendant broadens its argument beyond Plaintiff's disability discrimination claim, concurrently seeking dismissal of Plaintiff's intentional infliction of emotional distress, negligent infliction of emotional distress, and wrongful discharge claims.

### 1. Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA") and the Idaho Human Rights Act ("IHRA")[3]

The ADA mandates that employers shall not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Here, Defendant argues that Plaintiff was not disabled at the time of his termination and, as a logical result, could not have been fired because of any disability.

> ate, shall be entered against the adverse party.

**3.** The Idaho Supreme Court has held that the IHRA will be interpreted consistently with the ADA. *Foster v. Shore Club Lodge*, 127 Idaho 921, 908 P.2d 1228, 1232–33 (1995). Thus, with respect to the existence of a recognized disability, Plaintiff's ADA and IHRA claims are addressed together. *See Loomis v. Heritage Operating, L.P.*, 2006 WL 2228964 (D.Idaho 2006).

Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 4–9 (Docket No. 66).

Notwithstanding prior representations within his pleadings and previously-filed motions, Plaintiff counters by arguing that Defendant erroneously focuses the disability inquiry on Plaintiff's June 1, 2001 termination date. Pl.'s Resp. to Def.'s Mot. for Summ. J., pp. 1–2 (Docket No. 73). Instead, Plaintiff submits that his February 17, 2001 heart attack and ensuing six-week period away from work represents the relevant period of disability. *Id.* Indeed, in response to Defendant's motion for summary judgment, Plaintiff states in no uncertain terms:

> Mr. McWilliams does not allege that he was an individual with a disability on June 1, 2001, the date his employment was terminated. Rather, Mr. McWilliams alleges that he was a person with a disability between February 17, 2001 and April 4, 2001, the forty-two day absence from work for which his employment was terminated by Moscow Recycling. Whether or not Mr. McWilliams was a person with a disability at the time Moscow Recycling took adverse action against him is irrelevant with regard to his burden of proof.

*Id.* at pp. 2–3. In other words, it would appear that Plaintiff concedes he was not disabled as of June 1, 2001. Rather, Plaintiff seems to be arguing that it is the six-week period following his February 17, 2001 heart attack that defines his disability. Specifically, Plaintiff now claims that he was ultimately terminated in June 2001 "because of" the absences attributable to his heart attack and related health condition between February 17, 2001 and April 4, 2001. Plaintiff therefore argues that it is this six-week period that should be applied against the ADA.[4]

To establish a prima facie case of disability discrimination, Plaintiff must prove that he (1) was disabled under the ADA; (2) was a "qualified" individual and able to perform, with or without accommodations, the essential functions of the job; and (3) was terminated by his employer because of his disability.[5] *Josephs v. Pac. Bell,* 443 F.3d 1050, 1059 (9th Cir.2006); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996). There is no hard-and-fast rule toward consistently applying the ADA; for this reason, courts have been directed by Congress to engage in a case-by-case analysis when considering disability discrimination claims. *Toyota Motor Mfg. v.*

---

**4.** In its briefing and during oral argument, Defendant maintained that the relevant period of inquiry is the date of Plaintiff's termination—June 1, 2001. Such a position, however, ignores the deservedly discouraged practice of firing an employee solely on the specter or possibility of future health problems originating from a disability, although not technically "disabled" at the time of termination. While the cases cited by Defendant in support of this proposition do, in fact, highlight the termination date as the relevant period of inquiry, those cases dealt with an allegedly disabled individual as of the date of termination. If Plaintiff claimed he was disabled as of June 1, 2001, those cases may apply here; however, Plaintiff does not seem to be making such a claim. Therefore, these cases do not appear to apply. Defendant still appropriately argues that Plaintiff's alleged six-week period of disability does not rise to the level of a covered disability under the ADA and, therefore, is without merit. It is this argument that will be addressed here.

**5.** There is no dispute that Plaintiff was physically able to perform the essential functions of his job at the time of his termination. Further, there is clearly an issue of fact as to the reason for Plaintiff's termination, particularly when considering the June 1, 2001 letter and its focus on absences rather than job performance. Therefore, whether Plaintiff has a disability within the meaning of the ADA as a matter of law is the nub of this proceeding.

*Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

Under the ADA, disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Although Plaintiff is not arguing that Defendant "regarded" him as having a an impairment that substantially limited one or more of his major life activities under subsection (C), it is unclear whether and/or to what extent Plaintiff claims such an impairment under subsection (A) or a record of such an impairment under subsection (B).

Construing the evidence in the light most favorable to Plaintiff,[6] the Court will consider Plaintiff's arguments as incorporating both the actual impairment requirement under subsection (A) and the record of impairment under subsection (B) at this time. Given that the intent of the "record of impairment" requirement, in part, "is to ensure that people are not discriminated against because of a history of disability," there is no internal conflict between such an analysis, particularly when considering that both subsections require the existence of a physical impairment that substantially limits one or more of Plaintiff's major life activities. *See,* 29 C.F.R. § 1630 App., § 1630.2(k).

### a. Physical or Mental Impairment

Physical or mental impairment means "[a]ny physiological disorder, or condition, . . . or anatomical loss affecting one or more of the following body systems: neu-

rological, musculoskeletal, special sense organs . . . ." 29 C.F.R. § 1630.2(h)(1). Here, it is undisputed for the purpose of Defendant's motion for summary judgment, that Plaintiff's insulin-dependent diabetes and heart condition are qualifying "physical impairments." Def.'s Mem. in Supp. of Mot. for Summ. J., p. 5 (Docket No. 66). However, an impairment alone does not qualify as a disability under the ADA; the impairment must substantially limit one or more of Plaintiff's major life activities.

### b. Substantially Limits Major Life Activity

According to the regulations that guide the interpretation of the ADA, an impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Other courts have expanded the definition to include sitting, standing, lifting, and reaching. *See Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 948 (8th Cir.1999). The Ninth Circuit has recognized:

the illustrative list of major life activities requires the activity only to be of comparative importance and central to the life process itself, and it need not have a

---

**6.** During the February 20, 2008 hearing, Plaintiff's counsel argued that the issues surrounding whether Plaintiff was disabled under the ADA involved numerous questions of material fact. Therefore, it would seem that Plaintiff is conceding that his motion for summary judgment (Docket No. 68) should be denied for this reason. Plaintiff's motion for summary judgment should therefore be denied for that reason, as well as the existence of genuine issues of material fact. Defendant's motion for summary judgment will, in turn, be construed in the light most favorable to the non-moving party—in this case, Plaintiff.

public, economic, or daily character. To be a major life activity, the activity need not be essential to survival, but rather of central importance to most people's daily lives.

*Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1061–62 (9th Cir.2005).

Plaintiff himself argues that, from February 17, 2001 to April 4, 2001, he was limited in at least one major life activity. This is set forth in Plaintiff's own affidavit where he states:

> During those two days [in intensive care] I experienced difficulty breathing. I was confined to bed. I received oxygen to aid breathing and medications intravenously. Throughout my hospitalization, I was unable to take care of myself. I was unable to work. I was unable to drive. Generally, I was unable to do most of the things a non-impaired person can do. Initially, I didn't have the strength to walk at all. As I built up stamina, I could walk approximately ten to twenty feet before I needed to catch my breath and rest. I couldn't stand for more than approximately one minute at first before experiencing weakness and pain in my legs. As my stamina improved, I could stand for longer periods of time, several minutes.

> I was discharged ... on February 23, 2001. During the first week after discharge, I could walk no more than approximately thirty feet. I could not stand for more than one or two minutes. I couldn't raise my arms beyond shoulder height. I could not climb the two stairs into my home without help. I couldn't work. I couldn't take care of myself. I couldn't take care of my household. During this period I experienced breathing difficulty. I experienced periodic dizziness, nausea, and extreme fatigue.

Aff. of Robert McWilliams, ¶¶ 22 & 23 (Docket No. 68, Att. 2). While Defendant may argue that the absence of expert testimony as to Plaintiff's debilitating condition is fatal to Plaintiff's disability claim, Plaintiff has provided sufficient evidence that, during February 17, 2001 to April 4, 2001, the confluence of his diabetes and heart condition may have prevented him from performing a variety of tasks central to most people's lives. *See Loomis*, 2006 WL 2228964, *3 (quoting *Head*, 413 F.3d at 1058 ("The Court will note that 'Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage. Rather, [its] precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact.' ")). Therefore, at the very least, a question of fact exists as to Plaintiff's alleged impairment of a major life activity between February 17, 2001 and April 4, 2001.

However, regardless of whether a major life activity is impacted, Plaintiff must still demonstrate that his impairment "substantially limits" that major life activity in order to survive summary judgment; if it does not, summary judgment is warranted. "The word 'substantial' ... clearly precludes impairments that interfere in only a minor way." *Toyota*, 534 U.S. at 197, 122 S.Ct. 681 (citing *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 565, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)). Therefore, several factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Whether an individual is substantially limited in a major life activity must take into account mitigating measures such as medication and assisting

devices. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482–83, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

There exists an abundance of case law acknowledging a court's ability to rule, as a matter of law, that the duration of one's impairment of a major life activity was not long enough to rise to the level of a disability covered by the ADA. *See Thompson v. Eaton Corp.,* 2002 WL 31995670, *9 (W.D.Wis.2002) (even though parties agreed that plaintiff was unable to work at any job for over one month, "problem is that even five weeks is an insufficient period of time to establish a substantial limitation...."); *Jewell v. Reid's Confectionary Co.,* 172 F.Supp.2d 212 (D.Me.2001) (finding plaintiff not actually disabled under ADA where, following two heart attacks, doctor gave him clean bill of health and that he was physically capable of all functions of job held); *Taylor v. Nimock's Oil Co.,* 214 F.3d 957 (8th Cir.2000) (two-month hospitalization period following heart attack not considered significant in light of plaintiff's full release from doctor to return to work without restriction); *Hilburn v. Murata Elecs. North America, Inc.,* 181 F.3d 1220, 1229 (11th Cir.1999) (finding thirty-eight day leave secondary to heart attack to be "an insufficient amount of time to support a claim that [plaintiff] was substantially limited in the major life activity of working."); *Colwell v. Suffolk Co. Police Dep't,* 158 F.3d 635 (2d Cir.1998) (one-month hospital stay followed by six-month home recuperation, coupled with non-particularized and unspecific limitations upon return to work, did not constitute substantial impairment in ability to work); *Sanders v. Arneson Prods., Inc.,* 91 F.3d 1351 (9th Cir.1996) (Plaintiff's three-month psychological impairment "was not sufficient duration to fall within the protections of the ADA as a disability."); *McDonald v. Commonwealth of Pennsylvania,* 62 F.3d 92, 96 (3d Cir.

1995) (inability to work for two months following surgery not disability).

As applicable to this instant action, these cases suggest that, given the relative short, six-week absence from work, coupled with Plaintiff's return to work without restrictions or special accommodations, he did not, as a matter of law, suffer from a disability (or maintain a sufficient record of a disability) that is recognized by the ADA. *See Jewell,* 172 F.Supp.2d at 217 ("It tortures the phrase 'history of substantial limitation' to suggest Plaintiff's admittedly brief incapacitation, marked by mitigating measures, places him within the 'record of impairment' category of disability."); *but see McKenzie v. Dovala,* 242 F.3d 967, 968, 972–73 (10th Cir.2001) (finding that reasonable jury could conclude that plaintiff had record of disability when her disorder caused her to miss work for approximately two months); *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 32 (1st Cir.1996) (overturning district court's judgment as a matter of law in defendant employer's favor, holding "it is at least a debatable question whether, based on [plaintiff's testimony], the jury could conclude that he suffered from a continuing medical condition, persisting beyond the period immediately after the [heart] operation, that substantially limited one or more of his major life activities.")

Although short-term, temporary restrictions generally are not substantially limiting, an impairment does not necessarily have to be permanent to rise to the level of a recognized disability. Some conditions may be long-term or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, if severe, may nonetheless constitute disabilities. *Katz,* 87 F.3d at 31 ("Examples of impairments that are 'usually not disabilities' because they are 'temporary,' 'non-chronic,' and 'of short duration, with little

or no long term or permanent impact,' are broken limbs, sprained joints, concussions, appendicitis, and influenza.'" (citations omitted)).

Yet, the alleged severity, duration, and long-term impact of Plaintiff's condition is somewhat compromised by the fact that Plaintiff returned to work without any restrictions or accommodations. Further, Plaintiff worked full-time shifts uneventfully for approximately two full months until his termination. While such factors may imply or suggest that there is no evidence of long-term or residual effects from Plaintiff's heart attack which would preclude a claim under the ADA, it cannot be said that a rational jury could not conclude otherwise. It is indeed a close question whether, during the relevant six-week period, Plaintiff has offered sufficient evidence to prove that his medical condition substantially limited one or more of his major life activities within the meaning of the ADA. Because it is at least a debatable question, I will not, in advance of trial/in an anticipatory manner, substitute my judgment for that of the ultimate trier-of-fact. Accordingly, a genuine issue of material fact exists as to whether Plaintiff's impairment substantially limited one or more his major life activities.[7]

### 2. Plaintiff's Alleged Failure to Exhaust Administrative Remedies as to His Disability Discrimination Claim Under the IHRA

Defendant alternatively argues that Plaintiff failed to exhaust his administrative remedies as to his IHRA claim in particular and, therefore, this Court is without jurisdiction to hear that cause of action. Def.'s Mem. in Supp. of Mot. for Summ. J., p. 4 (Docket No. 66).

Specifically, Defendant claims that the IHRA requires that a complaint be filed with the Idaho Human Rights Commission ("IHRC") as a condition precedent to litigation and that a civil action may be filed in district court within ninety (90) days of issuance of a notice of administrative dismissal. *Id.* (citing I.C. § 67–5908(2)). Defendant points out that Plaintiff's initial charge of disability discrimination was not verified and that his claims under the ADA and IHRA were previously dismissed for this reason (Docket No. 34); however, at the same time, Defendant acknowledges that the Ninth Circuit allowed Plaintiff to ask the Equal Employment Opportunity Commission ("EEOC") for leave to file a late verification and then to seek leave from the district court to file an amended complaint. *Id.* Although Plaintiff filed an amended and verified charge of discrimi-

---

7. Defendant argues that Plaintiff's application of Social Security disability benefits contradicts his argument that he was capable of working on the day he was terminated. Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 12–15 (Docket No. 66). While such a reality may be introduced to challenge Plaintiff's veracity, it does not operate to speak to the alleged disability period between February 17, 2001 and April 4, 2001.

Further, Defendant's "same actor" argument is not sufficient as a matter of law to compel granting the requested motion. *See* Def.'s. Mem. in Supp. of Mot. for Summ. J., pp. 10–12 (Docket No. 66). For a favorable inference to apply in this case, Defendant

needed to be aware of Plaintiff's disability when hired. *See Tyndall v. Nat'l Educ. Ctrs.,* 31 F.3d 209, 215 (4th Cir.1994). However, Defendant does not offer any evidence that Plaintiff was disabled when it hired him in 1995. Moreover, the fact that Defendant allowed Plaintiff to return to work following prior hospitalizations does not resolve the issue as a matter of law, particularly when considering that, to act otherwise, may very well be contrary to the ADA. Regardless, even if the "same actor" inference applied, it is not a *de facto* resolution of Defendant's conduct. The inference, instead, may be considered by the trier-of-fact when considering Defendant's motivations.

nation with the EEOC, he failed to file an amended charge with the IHRC to set in motion a companion IHRA cause of action before this Court. *Id.* According to Defendant, without this precondition, Plaintiff cannot file his civil action and, therefore, the Court does not have jurisdiction over the IHRA claim. *Id.*

Plaintiff offers no response or argument in opposition.

This, coupled with the apparent fact that Plaintiff has not filed an amended charge with the IHRC to establish this jurisdiction in federal court, requires dismissal of Plaintiff's discrete IHRA claim. While the Ninth Circuit was reluctant to dismiss Plaintiff's ADA claim for the same technical reason, Plaintiff's failure to cure this administrative defect cannot be justified again. Therefore, Defendant's motion for summary judgment should be granted in this respect.

### 3. *Plaintiff's Intentional Infliction of Emotional Distress Claim*

 Looking to Idaho law, a claim for intentional infliction of emotional distress requires: (1) intentional or reckless conduct; (2) extreme or outrageous conduct; (3) a causal connection between the wrongful conduct and emotional distress, and (4) severe emotional distress. *Spence v. Howell,* 126 Idaho 763, 774, 890 P.2d 714 (1995). Plaintiff argues that there is no evidence that its conduct was either intentional, reckless, extreme, or outrageous. Def.'s Mem. in Supp. of Mot. for Summ. J., p. 15 (Docket No. 66).

Plaintiff offers no response or argument in opposition.

It is well-established that Idaho courts require bad or outrageous behavior on the part of Defendants to allow a claim for intentional infliction of emotional distress. *Ward v. Sorrento Lactalis, Inc.,* 392 F.Supp.2d 1187, 1195 (D.Idaho 2005) (citing *Edmondson v. Shearer Lumber*

*Prods.,* 139 Idaho 172, 75 P.3d 733, 741 (2003) (noting that, even if a defendant's conduct is "unjustifiable," it does not necessarily rise to the "outrageous" standard; to do so, it must be " 'atrocious' and 'beyond all possible bounds of decency' ")). The fact that an employer violated a statutory prohibition, by itself, is not sufficient. *Ward,* 392 F.Supp.2d at 1195 (granting summary judgment on intentional infliction of emotional distress claim in ADA context). As the court in *Ward* reasoned:

> Thus, even assuming that Defendant did fire Plaintiff because he was disabled, and even acknowledging that Defendant did so on the very first day Plaintiff returned from leave necessitated by his third back surgery, the Court still concludes that Defendant's behavior was not sufficiently outrageous to justify a claim of intentional infliction under Idaho law. Thus, the Court will grant summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

*Id.*

As in *Ward,* Plaintiff offers no evidence beyond the allegation of Defendant's disability discrimination. Without more, Defendant's conduct cannot be said to rise to the level of the requisite "outrageous," "atrocious," and "beyond all possible bounds of decency" standard. For this reason, Plaintiff's intentional infliction of emotional distress claim should be dismissed. Therefore, Defendant's motion for summary judgment should be granted in this respect.

### 4. *Plaintiff's Negligent Infliction of Emotional Distress Claim*

 To establish a claim for negligent infliction of emotional distress, there must be both an allegation and proof that a party claiming negligent infliction of emotional distress has suffered a physical

injury, i.e., a physical manifestation of an injury caused by the negligently inflicted emotional distress. *Loomis,* 2006 WL 2228964 at *6 (citing *Cook v. Skyline Corp.,* 135 Idaho 26, 13 P.3d 857, 865–66 (Idaho 2000)). Defendant argues that Plaintiff has not offered the necessary evidence establishing the existence of an injury caused by Defendant's allegedly negligent infliction of emotional distress. Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 15–16 (Docket No. 66).

Plaintiff offers no response or argument in opposition.

Moreover, a review of the record does not disclose evidence of physical injury needed to support a claim for negligent infliction of emotional distress. To be sure, Plaintiff's own affidavit reads in pertinent part: "Between June and December, 2001, my health continued to improve." Aff. of Robert McWilliams, ¶ 37 (Docket No. 68, Att. 2). It does not necessarily follow that Plaintiff now has, or at one time had, a physical injury supporting a negligent infliction of emotional distress claim, when he states in a sworn affidavit that, following his termination in June 2001, his health "continued to improve." As a consequence, Plaintiff's negligent infliction of emotional distress claim should be dismissed. Therefore, Defendant's motion for summary judgment should be granted in this respect.

5. *Plaintiff's Wrongful Discharge Claim*

Idaho law allows a tort claim to be brought for a termination that is in violation of public policy. *See, e.g., Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho,* 123 Idaho 650, 851 P.2d 946, 949 (1993); *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54, 57–58 (1977).

Defendant argues that Plaintiff has adequate remedies under the ADA for the alleged disability discrimination

against him and, therefore, his separate common law claim for wrongful termination in violation of public policy is precluded. Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 16–17 (Docket No. 66). In response, Plaintiff claims that Idaho and Ninth Circuit courts have not addressed whether a claim of discrimination under the ADA preempts a common law claim of wrongful discharge or whether wrongful discharge may be asserted as an independent cause of action. Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 19 (Docket No. 73).

In *Pavon v. Swift Transp. Co.,* 192 F.3d 902 (9th Cir.1999), the Ninth Circuit held that a wrongful discharge claim is only available where there is an absence of an adequate statutory remedy. *Id.* at 909. Applying this standard, federal courts have determined that statutory remedies under the ADA for the same allegations asserted within a wrongful discharge claim necessarily preclude the latter, separate, duplicative claim. *See, e.g., Loomis,* 2006 WL 2228964, *6 (granting summary judgment in favor of defendant on plaintiff's wrongful discharge claim where statutory remedies under ADA and IHRA exist).

Here, like *Pavon* and *Loomis,* Plaintiff's allegations supporting his wrongful discharge claim are subsumed by his ADA claim. Given the interaction between statutory remedies and common law causes of action, Plaintiff's wrongful discharge claim should be dismissed. Therefore, Defendant's motion for summary judgment should be granted in this respect.

**B. Plaintiff's Motions to Strike**

Plaintiff brings several motions to strike, including: (1) Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike (Docket No. 70); (2) Plaintiff's Motion to Strike Portions of Declaration of Lori K. Winn and Declaration of David Beyer (Docket No.

28); (3) Plaintiff's Motion to Strike Declaration Statements by Lori K. Winn (Docket No. 71); and (4) Plaintiff's Motion to Strike Second Declaration Statements by Lori K. Winn Filed on October 23, 2006 (Docket No. 84). Each of these motions seeks to exclude certain evidence offered in support of (or in opposition to) the parties' respective cross-motions for summary judgment. The evidence sought to be excluded, however, is not material to the resolution of these motions. In turn, these motions are moot because the objected-to evidence was not considered in my reaching a decision on the underlying motions for summary judgment. Therefore, Plaintiff's motions to strike should be denied as moot.

## C. Defendant's Motions to Strike

Defendant likewise brings its own motions to strike, including: (1) Defendant's Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 23); and (2) Defendant's Objection and Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 74). These motions seek to exclude certain testimony offered by Plaintiff as evidence in support of his own summary judgment efforts, as well as in opposition to Defendant's motions for summary judgment. The testimony at-issue, however, is not material to the resolution of these two dispositive motions. Therefore, for the same reasons identified above, Defendant's motions to strike should be denied as moot.

## D. Defendant's Motions in Limine

Defendant brings two motions in limine: (1) Defendant's (First) Motion in Limine (Docket No. 32); and (2) Defendant's Second Motion in Limine (Docket No. 62). In its first motion in limine, Defendant argues that evidence of Plaintiff's medical condition, physical limitation, or disability after June 1, 2001—the date Plaintiff was terminated—is irrelevant to the consideration of Plaintiff's disability claims and should be excluded at trial. Def.'s Mot. in Limine, p. 2 (Docket No. 32). In its second motion in limine, Defendant argues that the June 6, 2002 Report and Commission Determination finding probable cause to believe that Defendant engaged in unlawful disability discrimination against Plaintiff should be excluded. Def.'s Second Mot. in Limine, pp. 1–2 (Docket No. 62).

In the interest of allowing the presiding judge the opportunity to consider the evidence that will or will not be introduced and/or admitted at trial, Defendant's two motions in limine should be deferred at this time and Defendant may raise the issues therein closer to trial.

## IV. ORDER

In accordance with the foregoing, it is RECOMMENDED that the District Court enter an Order consistent with the following:

1. Defendant's Second Motion for Summary Judgment (Docket No. 64) be GRANTED in part and DENIED in part as follows:

a. As to Plaintiff's disability claim under the ADA, Defendant's Second Motion for Summary Judgment (Docket No. 64) be DENIED;

b. As to Plaintiff's disability claim under the IHRA, Defendant's Second Motion for Summary Judgment (Docket No. 64) be GRANTED;

c. As to Plaintiff's intentional infliction of emotional distress claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) be GRANTED;

d. As to Plaintiff's negligent infliction of emotional distress claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) be GRANTED; and

e. As to Plaintiff's wrongful discharge claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) be GRANTED.

2. Plaintiff's Motion for Summary Judgment (Docket No. 68) be DENIED;

3. Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike (Docket No. 70) be DENIED as moot;

4. Plaintiff's Motion to Strike Portions of Declaration of Lori K. Winn and Declaration of David Beyer (Docket No. 28) be DENIED as moot;

5. Plaintiff's Motion to Strike Declaration Statements by Lori K. Winn (Docket No. 71) be DENIED as moot;

6. Plaintiff's Motion to Strike Second Declaration Statements by Lori K. Winn Filed on October 23, 2006 (Docket No. 84) be DENIED as moot;

7. Defendant's Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 23) be DENIED as moot;

8. Defendant's Objection and Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 74) be DENIED as moot;

9. Defendant's Motion in Limine (Docket No. 32) is deferred to the trial judge;

10. Defendant's Second Motion in Limine (Docket No. 62) is deferred to the trial judge;

11. Plaintiff's Motion to Withdraw (Docket No. 91) be GRANTED; therefore, (1) Plaintiff's Motion to Strike Defendant's Responsive Motions/Documents and related Motion for Attorney's Fees and Costs (Docket No. 79), and (2) Second Motion to Strike Defendant's Response to Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike Filed October 19, 2006 (Docket No. 83) is withdrawn; and

12. Each party to incur their own costs and fees.

March 5, 2008