13 P.3d 857

**Sam COOK and Sandra Cook, husband and wife; Plaintiffs–Appellants,**

v.

**SKYLINE CORPORATION, a California corporation; Norwest Home Center, Inc., an Idaho corporation, d/b/a Norwest Mobile Homes, Defendants–Respondents.**

No. 24714.

Supreme Court of Idaho, Coeur d'Alene, April 2000 Term.

Sept. 29, 2000.

Rehearing Denied Nov. 30, 2000.

Evans, Craven Lackie, P.S., Coeur d'Alene, for appellants. Amy C. Clemmons argued.

Quane Smith, Coeur d'Alene, for respondents. Susan Service argued.

SILAK, Justice.

Appellants Sam and Sandra Cook (the Cooks) appeal the district court's order granting a new trial to respondent Skyline Corporation (Skyline).

## I.

## FACTUAL AND PROCEDURAL HISTORY

### A. Facts

In 1993, the Cooks purchased a manufactured home built by Skyline and sold and assembled by defendant Norwest Home Center, Inc. (Norwest). The Cooks' inspection of the assembled home revealed several defects that the Cooks believed were attributable to Skyline's manufacturing of the home and Norwest's transport and installation of the home.

The Cooks notified Norwest pursuant to the home's warranty provisions, but were dissatisfied with Norwest's ineffectual response to their concerns. In January or February of 1994, the Cooks notified Skyline of the problems they were having with Norwest's failure to respond satisfactorily to their warranty claims. Skyline assured the Cooks that the problems would be resolved, but the Cooks remained dissatisfied with Skyline's remedial measures.

### B. Procedural Background

On June 26, 1996, the Cooks filed a complaint alleging breach of contract, breach of warranty, Skyline's negligent selection of Norwest as a dealer, Norwest's negligence in making repairs, and unfair or deceptive trade practices under the Idaho Consumer Protection Act. Norwest went out of business in 1994, did not respond to the Cooks' complaint, and did not participate at trial. The Cooks secured a default judgment against Norwest on March 29, 1996.

At trial, it became clear that the breach of contract claim against Skyline was grounded on an alleged breach of the contract between Skyline and Norwest, to which the Cooks claimed third-party beneficiary status. Skyline objected, arguing that the breach of a third-party beneficiary agreement was not alleged in the Cooks' amended complaint and that it was not prepared to address such issues at trial. Skyline also objected to the testimony of Shelly Sturman (Sturman), a witness who had purchased a home from Norwest and who had problems with Norwest's warranty service. Skyline objected because the testimony was not limited to describing Norwest's allegedly faulty service, but also included descriptions of the defects encountered in Sturman's home. Skyline also objected to the testimony of an expert who testified that he had never seen a drip edge like the one on the Cooks' home installed on any other manufactured home.

The district court overruled all of Skyline's objections. The evidence was presented to the jury, which found in favor of the Cooks and awarded $75,684.15 for the breach of contract and warranty claims, plus an additional $75,684.15 in damages for emotional distress.

After the trial, Skyline filed alternative motions for a new trial under Idaho Rule of

Civil Procedure 59(a) and for judgment notwithstanding the verdict pursuant to Idaho Rule of Civil Procedure 50(b). The district court found no error in its earlier decision allowing the Cooks to proceed with their third-party beneficiary theory. The district court ruled, however, that it had abused its discretion in allowing the aforementioned testimony to which Skyline had objected. The district court also ruled that it had erred in allowing the Cooks to proceed with their negligent retention claim. The district court granted the motion for a new trial, but denied the motion for judgment notwithstanding the verdict. The Cooks appealed.

## II.

## ISSUES ON APPEAL

The Cooks raise the following issues on appeal:

A. Whether the district court abused its discretion in ruling that testimony regarding the drip edge on the Cook's home could be construed as an inadmissible post-incident design change.

B. Whether the district court abused its discretion in ruling that Shelly Sturman's testimony which listed the defects in her home created prejudicial error.

C. Whether the district court erred in ruling that the Cooks' negligence claim was not sufficiently pled under Idaho law

D. Whether the district court erred in ruling that medical opinion testimony is necessary to present a negligent infliction of emotional distress claim.

## III.

## STANDARD OF REVIEW

The district court's decision to grant a new trial under I.R.C.P. 59(a) will not be overturned absent an abuse of discretion. *See Lanham v. Idaho Power Co.*, 130 Idaho 486, 491, 943 P.2d 912, 917 (1997); *Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643, 654, 827 P.2d 656, 667 (1992). When a court's discretionary decision is reviewed on appeal, the appellate court considers "(1) whether the trial court correctly perceived the issue as one of discretion; (2)

whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) and whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

## IV.

## ANALYSIS

**A. The District Court Abused Its Discretion By Ordering A New Trial Based On Its Conclusion That The Testimony Regarding The Drip Edge On Redirect Was Erroneously Admitted.**

At trial, the Cooks called Mike Roerick (Roerick), a licensed manufactured home installer, to testify concerning the possible causes of the damage to the Cooks' manufactured home. During direct examination, Roerick testified that the installation of the Cooks' home "was done in such a way that most anything [Norwest] could have done wrong they did do wrong. The home was very poorly set up." Roerick also testified regarding the installation of the home's drip edge, a piece of metal flashing that runs along the perimeter of the roof. Roerick testified that "[the drip edge is] to be installed underneath the tar paper and over the top of the fascia to aid the water run off the roof."

When asked about the drip edge on the Cooks' home, Roerick said: "The drip edge was installed in such a manner that I'd never seen before on any different type of manufactured home or site-built home. The drip edge was installed with the fascia of the eave over the top of the bottom of the drip edge." Roerick also testified that most of the time, the drip edge is installed "over top of the fascia, forcing the water to run outside." Roerick further testified that in his opinion, a drip edge like the one on the Cooks' home would "let the water run inside of the fascia instead of forcing it over the outside of the fascia." Roerick also testified that he had inspected the Cooks' home during a rainy

day, and observed that while "some of [the water] would run off the roof like it was supposed to, but yet some of [the water] would run in behind the fascia." Skyline did not object to any of Roerick's testimony to that point.

On cross-examination, the following exchange occurred between Roerick and Skyline's trial counsel:

Q. You testified regarding the drip edge; is that correct?

A. Yes.

Q. And you testified as to how it was set up—on the Skyline home; is that correct?

A. How it was installed on this particular home, yes, versus how it's done on new homes.

Q. You mean versus how it's done on new Skyline homes?

A. That's right.

Q. Do you know whether the drip edge in the Cook's home was installed pursuant to the manufacturing specifications of this home?

A. I know it was installed different than any other that I've seen.

Q. Will you answer the question, please. Do you know whether the drip edge in the Cook's home was installed on their home in accordance with the specifications for this home?

A. I did not see the plans and specifications for this home.

On redirect examination, the following exchange between Roerick and Cooks' counsel occurred:

Q. You said you're not an engineer with regard to drip edge and design of a home. Are you aware of how the Skyline homes install their drip edge now?

A. They do it like everyone else now –

[COUNSEL FOR SKYLINE]: Objection, Your Honor. I think that it's clearly improper.

[COUNSEL FOR THE COOKS]: He opened the door on cross by asking about it, Your Honor.

THE COURT: I'll permit it. Overruled.

THE WITNESS: Like I said, in 11 years the Cooks' home is the only one I've ever seen with the drip edge installed behind the fascia.

Q. BY [COUNSEL FOR THE COOKS]: Are you aware of how Skyline installs the drip edge now?

A. I set a lot of Skyline homes last summer. They install it on the outside now.

In its order granting a new trial, the district court determined it had abused its discretion in admitting Roerick's drip edge testimony on redirect, stating: "The Court believes it is likely that the jury perceived the final effect of such evidence to be that Skyline changed its practices after building this home, tacitly admitting that this home was assembled incorrectly as to that aspect. This violates I.R.E. 407, and Skyline was prejudiced thereby."

Idaho Rule of Evidence 407 states:

**Subsequent Remedial Measures:** Whenever, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures if offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

I.R.E. 407.

The Cooks argue that Roerick's testimony cannot be construed as a subsequent remedial measure, and that I.R.E. 407 does not apply because the testimony was presented to show improper installation of the drip edge, not to establish a defective design. We agree. A close examination of Roerick's testimony reveals that the testimony concerning the drip edge was not evidence of a post-incident design change. Roerick specifically admitted during cross-examination that he had never seen the design specifications for the Cooks' home, and that he could not testi-

fy that the home was not built as designed. Roerick also testified that in 11 years of experience in setting manufactured homes, including a number of Skyline homes, he had never seen a drip edge installed in the same manner as the drip edge on the Cooks' home. Roerick concluded:

My overall impression is the home is – is not, was not set properly. There are things that cannot be attributed to setup. I would not settle for it if it was my own. I believe Skyline is a decent built home. It's just every manufacture has a lemon, and I feel that this is one of them.

In light of this statement, it is clear that Roerick was not testifying that Skyline had changed its design to correct the type of problems that occurred in the Cooks' home. Rather, Roerick testified that he believed the drip edge in the Cooks' home was defective because he had never seen a similar method of drip edge installation in any other manufactured home.

Later in the trial, one of Skyline's expert witnesses testified that the drip edge in the Cooks' home was installed according to design specifications and in accordance with engineering principles. Skyline availed itself of its opportunity to present evidence to contradict Roerick's testimony and was thereby able to counteract any prejudice that may have occurred. We conclude the district court did not err in admitting the Roerick's testimony at trial, and that the district court abused its discretion in granting a new trial with respect to this issue.

**B. The District Court Abused Its Discretion By Ordering A New Trial Based On Its Determination That Sturman's Testimony Listing The Defects In Her Home Created Prejudicial Error.**

Prior to trial, Skyline filed a motion in limine, requesting that the district court prohibit as irrelevant and prejudicial any testimony tending to show manufacturing defects in other Skyline homes. The district court ruled that such evidence was "properly admissible if it was probative of Skyline's knowledge of poor warranty service work by Norwest," but ruled that evidence of manu-

facturing defects was irrelevant and was prejudicial. The district court also ruled that the evidence should be "confined to Skyline's knowledge of Norwest's poor service work without proving the nature of the defects sought to be corrected."

At trial, Shelly Sturman took the witness stand to testify concerning the problems she had experienced with Norwest's warranty service. Before Sturman testified, however, counsel for both parties engaged in a side-bar conference with the trial judge. During the side-bar, the Cooks' counsel represented that Sturman would not testify about specific complaints, only that she had made complaints to Skyline about Norwest's service. After side-bar, the district court stated: "Let the record note that the defense has a continuing objection to the relevance of the testimony." The Cooks' trial counsel then asked Sturman to tell the jury "in general what your problems with Norwest service were." In addition to describing problems with service, however, Sturman also described the structural problems she had encountered in the manufactured home she had purchase from Norwest.

The district court instructed the jury that Sturman's testimony could be considered only to the extent it showed that Sturman had complained to Skyline about Norwest's service. The district court, in its memorandum and order granting a new trial, ruled that Sturman's testimony was irrelevant and prejudicial and that the district court had abused its discretion in allowing the testimony at trial.

 The Cooks argue that Skyline failed to preserve this issue for appeal because it failed to make a timely objection. This argument lacks merit because, as noted above, Skyline had made a continuing objection to the relevance of Sturman's testimony. Skyline's objection to Sturman's testimony was the subject of a side-bar conference, and the content of the side-bar was made part of the record after Sturman's testimony.

The Cooks also argue that a new trial is not warranted unless the court determines that a different result would follow on retrial, citing *Blaine v. Byers*, 91 Idaho 665, 671, 429

P.2d 397, 403 (1967). In *Blaine*, the defendants unsuccessfully moved for a new trial on grounds that the evidence presented at trial did not support the amount of damages awarded by the jury. On appeal, this Court upheld the district court's denial of the motion for a new trial, determining that "the general rule in this jurisdiction is that a motion for a new trial should not be granted unless it appears that a different result would follow on retrial." *Id.*

The rule set forth in *Blaine* does not apply in the instant case, however. The *Blaine* decision was written before the adoption of I.R.C.P. 59(a). The motion for a new trial in *Blaine* would have been brought under I.R.C.P. 59(a)(6), which provides that a new trial may be granted when there is "[i]nsufficiency of the evidence to justify the verdict or other decision .... " This court has held that the standard for considering whether new trial should be granted under I.R.C.P. 59(a)(6) is similar to that set forth in *Blaine*. *See Shabinaw v. Brown*, 131 Idaho 747, 751, 963 P.2d 1184, 1188 (1998); *O'Dell v. Basabe*, 119 Idaho 796, 805, 810 P.2d 1082, 1091 (1991). However, the trial court granted a new trial in this case pursuant to I.R.C.P. 59(a)(1), which requires only a determination that the district court abused its discretion in a manner which has deprived either party of a fair trial. *See O'Dell*, 119 Idaho at 804, 810 P.2d at 1090.

■ The Cooks also argue that under Idaho law the district court's limiting jury instruction is deemed to have cured any possible prejudice. Idaho Rule of Evidence 105 provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

I.R.E. 105. This Court has accordingly held that improper admission of evidence will be cured by proper instructions to the jury. *See Hansen v. Howard O. Miller, Inc.*, 93 Idaho 314, 318, 460 P.2d 739, 743 (1969). "Error in admission of evidence may be cured by proper instruction, and it must be presumed that

the jury obeyed the trial court's direction." *State v. Tolman*, 121 Idaho 899, 905–06, n. 6, 828 P.2d 1304, 1310–11 (1992) (citing *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989); *State v. Rolfe*, 92 Idaho 467, 444 P.2d 428 (1968); *State v. Urie*, 92 Idaho 71, 437 P.2d 24 (1968)). This Court has also held that only where the evidence is highly prejudicial will no instruction cure the error of its admission. *See Hansen*, 93 Idaho at 318, 460 P.2d at 743 (citing *State v. Knutson*, 47 Idaho 281, 274 P. 108 (1929)).

Skyline argues that while a limiting jury instruction may be used to reduce the prejudicial effect of evidence admitted for nonprobative reasons, such as for impeachment, such evidence may yet be properly excluded as unfairly prejudicial. *See Watson v. Navistar*, 121 Idaho 643, 664, 827 P.2d 656, 677 (1992); *Davidson v. Beco Corp.*, 114 Idaho 107, 110, 753 P.2d 1253, 1256 (1987). This argument is unpersuasive, however. The language cited by Skyline deals only with the factors which a court must consider at trial when determining whether to admit evidence which is admissible for limited purposes only.

In *Watson*, for example, this Court observed:

> If it appears that a party is seeking the introduction of evidence of subsequent remedial measures to imply culpability under the guise of impeachment or any other purpose, certainly the trial court should disallow the evidence. However, the trial court is in the best position to assess the prejudicial effect of the evidence. If the trial court is satisfied that the evidence has substantial probative value on the issue on which it is introduced and that the issue is genuinely in dispute it should be allowed. Furthermore, a limiting instruction can aid the jury. But, if the trial court concludes that factors of undue prejudice, confusion of issues, misleading the jury or a waste of time outweigh the probative value of the evidence it should properly be excluded. See 10 James W. Moore & Helen I. Bendix, Moore's Federal Practice § 407.02, at IV–153 (2d ed.1991).

121 Idaho at 664, 827 P.2d at 677.

In *Davidson*, this Court upheld the admission of a settlement offer for impeachment

purposes. This Court observed: "The dangers are high that, even with a limiting instruction, the jury will *substantively consider* the impeachment evidence. However, the trial judge, in exercising his discretion, will consider the heavy weight of this factor when applying the Rule 403 balancing test." *Davidson,* 114 Idaho at 110, 753 P.2d at 1256. (emphasis added). The *Davidson* Court also warned against giving due consideration to only the "unfair prejudice" element of I.R.E. 403, observing that "[p]robative evidence is always prejudicial to someone." *Id.* at 110–11, 753 P.2d at 1256–57.

We hold that the district court abused its discretion by failing to recognize the general rule that a jury instruction is presumed to have cured any error in the admission of evidence. *See Hansen,* 93 Idaho at 318, 460 P.2d at 743. We therefore reverse the district court's order. On remand, the district court should reconsider the motion for a new trial, and determine whether Sturman's testimony was so highly prejudicial that the jury instruction was insufficient to cure any resulting prejudice. In reaching its final determination, the district court should take special care not to discount the probative value of Sturman's testimony. *See Davidson,* 114 Idaho at 110, 753 P.2d at 1256.

### C. The District Court Erred By Ordering A New Trial Based On Its Finding That The Cooks' Failed To Sufficiently Plead Their Negligence Claim.

The Cooks' complaint included a negligence cause of action against Skyline. In this cause of action, the Cooks alleged that Skyline "knew or should have known Norwest Home Center was not capable of properly fulfilling its service obligations." The Cooks further alleged that Skyline "negligently selected Norwest Home Center as a designated Skyline Homes Dealer," and that Skylines negligence was a direct and proximate cause of the Cooks' damages.

At trial, the Cooks advanced not only the theory that Skyline was negligent in selecting Norwest as a dealer, but also that it was negligent in retaining Norwest in spite of customers' dissatisfaction with Norwest's installation and service work. In its motion for a new trial, Skyline argued that it was entitled to a new trial on the ground of unfair surprise because it was prepared to address only the issue of negligent selection as opposed to negligent retention of Norwest. In its order granting a new trial, the district court ruled that the Cooks had not pled the issue of negligent retention, and that Skyline was prejudiced when the district court permitted trial on the unpled issue. The district court concluded that Skyline was entitled to a new trial under I.R.C.P. 59(a)(3), which provides for a new trial where there is unfair surprise "which ordinary prudence could not have guarded against." The Cooks argue that since Idaho is a notice pleading state, the district court erred in overturning its earlier decision to allow the negligent retention theory to proceed.

The Idaho Rules of Civil Procedure establish a system of notice pleading. *See Straley v. Idaho Nuclear Corp.,* 94 Idaho 917, 921, 500 P.2d 218, 222 (1972). In such a system, a pleading "which sets forth a claim for relief ... need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in addition to alleging jurisdiction of the court and a demand for judgment ...." *Archer v. Shields Lumber Co.,* 91 Idaho 861, 866, 434 P.2d 79, 84 (1967) (quoting I.R.C.P. 8(a)). Notice pleading frees the parties from pleading particular issues or theories, and allows parties to get through the courthouse door by merely stating claims upon which relief can be granted. *See Dursteler v. Dursteler,* 108 Idaho 230, 233, 697 P.2d 1244, 1247 (Ct.App. 1985).

The Idaho Court of Appeals has observed:

A party's pleadings should be liberally construed to secure a "just, speedy and inexpensive" resolution of the case. I.R.C.P. 1(a); *see M.T. Deaton & Co. v. Leibrock,* 114 Idaho 614, 759 P.2d 905 (Ct.App.1988). With the advent of notice pleading, a party is no longer slavishly bound to stating particular theories in its pleadings. *Dursteler v. Dursteler,* 108 Idaho 230, 697 P.2d 1244 (Ct.App.1985), *later proceeding,* 112 Idaho 594, 733 P.2d 815 (Ct.App.1987).

Rather, a complaint need only state claims upon which relief may be granted. *Id.; see generally* I.R.C.P. 8(a)(1). However, the liberality of our modern pleading rules is not without its limits. To insure fair adjudication, a plaintiff may be required to refine the issues once litigation has commenced. *Dursteler v. Dursteler, supra.* ... In addition, where issues not raised by the pleadings are either expressly or impliedly tried, the trial court has discretion to decide those issues and to permit the pleading party to amend its pleadings to conform to the proof offered at trial. I.R.C.P. 15(b); *Murr v. Selag Corp.,* 113 Idaho 773, 747 P.2d 1302 (Ct.App.1987); *see also M.K. Transport, Inc. v. Grover,* 101 Idaho 345, 612 P.2d 1192 (1980) .... However, the trial court is under no obligation to compel the pleading party to amend his or her complaint. The emphasis of the rule is to insure that a "just result" is accomplished, rather than requiring strict adherence to rigid forms of pleading. *See Sines v. Blaser,* 98 Idaho 435, 439, 566 P.2d 758, 762 (1977).

*Christensen v. Rice,* 114 Idaho 929, 931, 763 P.2d 302, 304 (Ct.App.1988).

█ When construed liberally, the complaint in the instant case seems to give sufficient notice of the Cooks' claims to Skyline. Even though the complaint specifically alleged that Skyline was negligent in selecting Norwest, the complaint also alleged that Skyline "knew or should have known Norwest Home Center was not capable of properly fulfilling its service obligations." This second allegation seems to put Norwest on notice that the Cooks would attempt to show that at some point, Skyline either knew or should have known that Norwest was not capable of fulfilling its obligations.

When the allegations are read together, the complaint would seem to support a cause of action for both negligent selection and negligent retention of Norwest. We therefore hold that the district court erred in ruling that the Cooks failed to sufficiently plead their negligence cause of action.

## D. The District Court Did Not Err In Ruling That Medical Opinion Testimony Is Necessary To Present A Negligent Infliction Of Emotional Distress Claim.

At trial, the Cooks testified that living in and dealing with the problems arising from their defective home caused emotional distress. Sandra Cook testified that the situation was "very stressful," that the problems put distance between herself and her husband, that she felt ill just being in the house, and that she suffered from frustration, headaches and irritability. Sam Cook testified that he suffered from ulcers and anxiety, and that he was "shaky" and "shaky-voiced." Sam also testified that he was "not ashamed to say that [he] even cried." In its memorandum and order granting a new trial, the district court ruled it had previously erred in letting the jury consider emotional distress in awarding damages to the Cooks because the Cooks failed to support their emotional distress claims with expert testimony.

█ The Cooks argue the district court erred in ruling that expert testimony was necessary to recover on a negligent infliction of emotional distress claim, citing *Czaplicki v. Gooding Joint School District No. 231,* 116 Idaho 326, 775 P.2d 640 (1989). In *Czaplicki,* this Court held that a plaintiff's claim for emotional distress damages will survive summary judgment as long as they allege physical manifestations of the emotional distress, because such allegations reveal "at a minimum that a genuine issue of fact exists with respect to the [plaintiff's] claims for the negligent infliction of emotional distress." *Czaplicki,* 116 Idaho at 332, 775 P.2d at 646. In a later case, this Court interpreted *Czaplicki* to hold the allegations asserted by the lay witnesses in their complaint "were sufficient to constitute an allegation of a manifestation of a physical injury to raise an issue of fact which *required a trial* on that issue." *Evans v. Twin Falls County,* 118 Idaho 210, 218, 796 P.2d 87, 95 (1990) (emphasis added). However, in *Evans,* this Court went on to hold that in order to "allege and prove a claim for negligent infliction of emotional distress there must be both an allegation and *proof* that a party claiming negligent inflic-

tion of emotional distress has suffered a physical injury, i.e., a physical manifestation of an injury *caused* by the negligently inflicted emotional distress." *Evans*, 118 Idaho at 218, 796 P.2d at 95 (emphasis added).

In *Evans*, the plaintiff filed suit against Twin Falls County based on events that occurred when sheriff's deputies executed a writ of execution on a judgment. This Court affirmed the district court's order granting summary judgment dismissing the plaintiff's claim for negligent infliction of emotional distress. The plaintiff alleged that he had suffered from elevated blood pressure, which he believed resulted from emotional distress negligently inflicted upon him. This Court observed:

> [T]here was a substantial amount of medical testimony in the record all of which clearly explained that Mr. Evans' high blood pressure condition preceded the events in question and had no relationship to the incident in this case.

*Evans*, 118 Idaho at 219, 796 P.2d at 96. Further, this Court considered the testimony of the plaintiff's doctor who stated that Mr. Evans was not diligent in treating his blood pressure before the incident occurred, and that there was no connection between Mr. Evans' physical condition and the allegedly negligent behavior. This Court concluded:

> There is, therefore, no evidence in this record to support the general allegation in the amended complaint that Mr. Evans' high blood pressure was caused by the incidents on April 15, 1987. Mr. Evans' opinion on that medical issue would in any event be inadmissible under Rule 701 of the Idaho Rules of Evidence and *our cases* interpreting that rule.

*Id.* (citing *Flowerdew v. Warner*, 90 Idaho 164, 409 P.2d 110 (1965)). It is clear from *Evans* that I.R.E. 701 affords the district court discretion to determine whether a lay witness may testify as to his or her opinion regarding certain matters but testimony offered by a lay person relating to the cause of a medical condition should be disregarded. *See Evans*, 118 Idaho at 219, 796 P.2d at 96.

In regard to this case, we note that only some of the physical manifestations of emo-

tional distress of which the Cooks testified at trial can be classified as "medical conditions" for which an expert would be required to testify. For example, Sam Cook testified that he has suffered from ulcers since the problems with the home arose, and Sandra Cook testified that she has suffered from headaches. However, other of the Cooks' physical manifestations of distress included such symptoms as lost sleep, irritability, anxiety, and being "shaky-voiced" which a lay person should be able to testify he or she had experienced. On remand, the district court should exercise its discretion to determine which of the Cooks' physical manifestations are medical conditions for which expert testimony is required to establish causation.

## V.

## CONCLUSION

We hold the district court abused its discretion in granting the motion for new trial. We therefore remand the case, instructing the district court to reconsider Skyline's motion for a new trial in light of this opinion. We also instruct the district court to reconsider and to exercise its discretion to determine which of those physical manifestations are "medical conditions" for which expert testimony is required to show causation. Costs, but not attorney fees, are awarded to appellants as the prevailing parties.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.