# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40368-2012

JOSEPH PIERCE,

    Plaintiff-Appellant,

v.

STEVE McMULLEN,

    Defendant-Respondent,

and

HIGHLAND FINANCIAL, LLC,

    Defendant.

Coeur d'Alene, April 2014 Term

2014 Opinion No. 50

Filed: June 17, 2014

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. The Hon. John T. Mitchell, District Judge.

The judgment of the district court is <u>reversed</u>.

Melanie E. Baillie, James, Vernon & Weeks, P.A., Coeur d'Alene, argued for appellant.

Steve E. McMullen, Post Falls, argued in his own behalf.

---

EISMANN, Justice.

This is an appeal out of Kootenai County from a judgment dismissing Mr. Pierce's complaint seeking damages he sustained in what he contended was a foreclosure scam. Only Mr. McMullen, a Defendant, appeared in the action, but he did not deny the allegations of wrongdoing in the complaint. When Mr. McMullen failed to appear at the trial, the district court ordered that he was in default, that Mr. Pierce prevailed on his complaint, and that he could present evidence of his damages. Mr. Pierce did so, but the district court later dismissed the action on the ground that Mr. Pierce had failed to prove liability. We reverse the judgment of the district court.

# I.
## Factual Background.

On December 14, 2009, Joseph Pierce filed this action against Steven McMullen and Highland Financial, LLC, seeking damages for various violations of the Idaho Consumer Protection Act and for breach of contract, all based upon an alleged scam in which the Defendants represented that they could protect Mr. Pierce from losing his equity in real property that was facing foreclosure. He alleged that the Defendants obtained title to his real property pursuant to a promise to assume the loans secured by the property, to market and sell the property, and to pay him at least $50,000 or more from the sale proceeds, depending upon the sale price. He claimed that he deeded the property to the Defendants, that they failed to make the payments on the loans, and that the property was sold at a foreclosure sale. The complaint also alleged that Highland Financial was the alter ego of Mr. McMullen.

The Defendants did not appear in this action, and on August 6, 2010, the court entered default against them. On April 25, 2011, Mr. Pierce appeared in court for an evidentiary hearing on the amount of damages. At the hearing, his counsel stated that she wanted to obtain punitive damages, but the district court informed her that she would have to proceed pursuant to Idaho Code section 6-1604. That statute requires a pretrial motion and hearing before the court, at which the court must determine, after weighing the evidence presented, that the moving party has established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. Mr. Pierce's counsel then elected to have a hearing pursuant to that statute rather than a hearing on the amount of damages. She called Mr. Pierce as a witness, and, at the conclusion of his testimony, the district court found that there was a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. On May 3, 2011, the district court entered an order authorizing Mr. Pierce to file an amended complaint to include a request for punitive damages.

Mr. Pierce filed his amended complaint on May 11, 2011. The complaint simply added allegations to support an award of punitive damages. On June 13, 2011, Mr. McMullen filed a notice of appearance on behalf of himself and on behalf of Highland Financial. On June 28, 2011, Mr. McMullen filed an answer to the amended complaint in his behalf and on the behalf of Highland Financial. Mr. McMullen was not licensed to practice law in Idaho, therefore his

2

appearance on behalf of Highland Financial and the answer he filed on its behalf were nullities. In the answer, Mr. McMullen only denied the allegations regarding punitive damages.

The case was scheduled for trial to commence on June 18, 2012. Plaintiff appeared with counsel, but the Defendants did not appear in person or by counsel. After discussion with Mr. Pierce's counsel, the district court stated that Mr. McMullen "is defaulted, his answer is stricken, and the plaintiff prevails on their [sic] claims, so what evidence of damage did the plaintiff want to put on today?" Mr. Pierce's counsel responded that she would call Mr. Pierce to testify about damages and another witness to present testimony regarding punitive damages. Mr. Pierce then testified as did another alleged victim of Mr. McMullen. At the conclusion of the testimony, the district court ordered Mr. Pierce's attorney to submit findings of fact and a brief as to why Mr. Pierce should be entitled to the relief requested. On June 22, 2012, Mr. Pierce's counsel filed proposed findings of fact and conclusions of law and a trial brief.

On July 31, 2012, the district court issued its memorandum decision holding that Mr. Pierce had failed to prove any of his claims and ordering that his amended complaint be dismissed with prejudice. On the same date, the court entered a judgment dismissing this lawsuit with prejudice. Mr. Pierce timely appealed.

## II.
### Did the District Court Err in Dismissing the Complaint?

The district court dismissed Mr. Pierce's complaint on two grounds: the lack of evidence to support the claims and the lack of law to support the claims. In doing so, the district court erred.

**a. The lack of evidence supporting Mr. Pierce's claims.** In its memorandum decision entered on July 31, 2012, the district court held that Rule 55(b)(2) of the Idaho Rules of Civil Procedure authorized it to make factual findings. That rule provides that if, in order to enter a judgment by default, "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper." I.R.C.P. 55(b)(2). In so holding, the district court erred in several respects.

*i. No default was entered in this case.* There is a clear distinction between the entry of default and a default judgment. I.R.C.P. 55(c). "The default entry is simply an

3

interlocutory order that in itself determines no rights or remedies, whereas the default judgment is a final judgment that terminates the litigation and decides the dispute." 46 Am. Jur. 2d. *Judgments* § 233 (2006). There cannot be a default judgment without the entry of a default. I.R.C.P. 55(a)(2).

When the Defendants failed to timely answer or otherwise defend against the initial complaint, Mr. Pierce obtained the entry of their default. However, he did not then obtain a default judgment. Instead, he filed and served upon them an amended complaint adding a request for punitive damages. By doing so, he waived the entry of default and it was no longer of any effect. "[A] substantive amendment to a complaint supersedes the original complaint, and effectively opens the default which permits the defaulting defendant to answer." 46 Am. Jur. 2d *Judgments* § 277 (2006); *Kingsbury v. Brown*, 60 Idaho 464, 469, 92 P.2d 1053, 1054-55 (1939) (recognizing the rule). After Mr. Pierce served the amended complaint on the Defendants, Mr. McMullen filed an answer. In his answer, Mr. McMullen purported to answer also on behalf of the limited liability company, but because he was not licensed to practice law in Idaho his attempt to answer on the company's behalf was a nullity. However, Mr. Pierce did not again seek entry of default against the company.

Neither of the Defendants appeared at the trial in this case, which resulted in Mr. Pierce's attorney and the district court becoming confused as to what to do. The district court asked Mr. Pierce's counsel, "Well, in any event, Mr. McMullen's not present here in the courtroom, and how do you wish to proceed?" Counsel responded, "Well, we would—we would move to strike the answer and I guess in order to assess damages, we're going to have to put on some evidence for the Court, and we would move to do that and just move forward on a damage award." It is not clear why counsel wanted to strike the answer. In a civil case, a trial can commence and proceed in the absence of a party who fails to appear at the trial. *See Dustin v. Beckstrand*, 103 Idaho 780, 786, 654 P.2d 368, 374 (1982). "Parties must be given an opportunity to be present, but if that opportunity is given, their absence during the trial does not affect the right to proceed." 75 Am. Jur. 2d *Trial* § 162 (2007). In fact, the provision in the Idaho Code of Judicial Conduct that prohibits ex parte communications was amended to create an exception for when a party fails to appear at a court proceeding. It provides, "During a scheduled court proceeding, including a conference, hearing, or trial, a judge may initiate, permit, or consider communications dealing with substantive matters or issues on the merits of the case in the

4

absence of a party who had notice of the proceeding and did not appear." Idaho Code of Judicial Conduct, Canon 3B(7)(e).

In response to the request by Mr. Pierce's counsel to have Mr. McMullen's answer stricken, the district court asked the legal basis for the request, which counsel could not provide. The court then took a recess to examine the rules of civil procedure. It concluded that there were three rules that authorized the court to find Mr. McMullen in default. First, because Mr. McMullen had failed to submit proposed findings of fact and conclusions of law and a pretrial brief as required by the court's scheduling order, the court concluded that Rule 16 authorized the court to impose a sanction of entering a default judgment against Mr. McMullen. Second, the court stated it was entitled to dismiss Mr. McMullen's answer under Rule 41(b) for failure to prosecute his defense. Third, the court stated that it was entitled to dismiss his defense for inactivity under Rule 40(c). In its later written opinion, the court wrote that it had "held default was appropriate due to McMullen's failure to appear at trial, and struck McMullen's answer pursuant to I.R.C.P. 41(b)." There is nothing in that rule that could reasonably be construed as authorizing the striking of Mr. McMullen's answer or the entry of his default.

The rule states, "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." I.R.C.P. 41(b). Mr. McMullen was the defendant, not the plaintiff. The rule makes no mention of taking any action against a defendant. Rules 40(c) and 16 orally cited by the district court likewise would not support either striking Mr. Mullen's answer or ordering his default.[1] Thus, there was no legal basis for the district court ordering that Mr. McMullen's answer be stricken or that he be defaulted.

At the commencement of the trial held on June 18, 2012, the district court stated that Mr. McMullen "is defaulted, his answer is stricken, and *the plaintiff prevails on their claims*, so *what*

_____

[1] Rule 40(c) permits dismissal of a lawsuit where no action has been taken for a period of six months and there is no showing of good cause for retention, as long as there was fourteen days' prior notice given of the pending dismissal. The rule clearly had no application here. There is nothing in the rule that could reasonably be construed as authorizing any action against a defendant. Rule 16(i) provides for sanctions as provided in Rule 37(b)(2)(B), (C), (D) for failure "to obey a scheduling or pre-trial order," and Rule 37(b)(2)(C) permits as a sanction "[a]n order striking out pleadings" and "rendering a judgment by default against the disobedient party." However, "'[p]rocedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions.' '[A]n individual must be provided with notice and an opportunity to be heard.'" *Meyers v. Hansen*, 148 Idaho 283, 291, 221 P.3d 81, 89 (2009) (citations omitted). Imposing a sanction of striking Mr. McMullen's answer or entering default against him without notice and an opportunity for a hearing would have violated his rights to due process.

5

*evidence of damage* did the plaintiff want to put on today?" (Emphases added.) The court cannot mislead a party by telling him that he prevails on his claims and need only present evidence of damages at the trial and then dismiss the lawsuit because he only presented evidence of damages and failed to present evidence of liability.

Although the court stated that Mr. McMullen was "defaulted," default was never entered against him. A court's oral statement that Mr. McMullen was defaulted was not a recognizable order for entry of default under Rule 55(a)(1). *See Sherwood & Roberts, Inc. v. Riplinger*, 103 Idaho 535, 539, 650 P.2d 677, 681 (1982). It also could not constitute the *entry* of default, which would require the filing of a document stating that Mr. McMullen was in default. A court can "order entry of default against the party." I.R.C.P. 55(a)(1). Ordering the entry of default is not entering the default. The meaning of the word "entry" is shown by Rule 58(a) regarding the entry of a judgment. That rule states that "the court shall sign the judgment and the judgment shall be entered by the judge or clerk." I.R.C.P. 58(a). It then states what conduct constitutes the entry of the judgment. "The filing of a judgment by the court as provided in Rule 5(e) or the placing of the clerk's filing stamp on the judgment constitutes the entry of the judgment; and the judgment is not effective before such entry." *Id*. It is the filing of the judgment by either the judge or the clerk that constitutes entry of the judgment, and it is likewise the filing of the default by either the judge or the clerk that constitutes entry of default. In order for default to be entered, the appropriate document must be filed. Thus, there was no entry of default against Mr. McMullen in this case. Since there was no entry of default, there was no proceeding for a default judgment, and Rule 55(b)(2) did not apply.

*ii. No evidence of liability was necessary because the Defendants did not deny the allegations in the amended complaint regarding liability.* Mr. Pierce's initial complaint included paragraphs numbered 1 through 33 alleging the basis of his claims against the Defendants. The amended complaint merely restated paragraphs 1 through 33 and added paragraphs numbered 34 through 38 regarding punitive damages. Mr. McMullen filed an answer to the amended complaint, but he only denied the allegations regarding punitive damages. Paragraph 34 incorporated by reference paragraphs 1 through 33, but in his answer Mr. McMullen stated with respect to paragraph 34, "no answer required." Because he did not deny any of the allegations in paragraphs 1 through 33, those allegations were deemed admitted, I.R.C.P. 8(d), and no evidence was necessary to prove them. "Averments in a complaint to

6

which a responsive pleading is required are admitted when not denied in the responsive pleading." *Lindgren v. Martin*, 130 Idaho 854, 856, 949 P.2d 1061, 1063 (1997). In his answer, Mr. McMullen also purported to answer on behalf of Highland Financial, but because he was not licensed to practice law in Idaho his attempt to answer on the company's behalf was a nullity. To consider that as an answer on behalf of the company would be permitting the unauthorized practice of law. *Kyle v. Beco Corp.*, 109 Idaho 267, 271-72, 707 P.2d 378, 382-83 (1985). Therefore, neither Defendant denied the allegations in paragraphs 1 through 33 of the amended complaint. Those allegations were as follows:

## I. Parties

1. Plaintiff is, and at all times material has been, a resident of Kootenai County, Idaho.

2. Upon information and belief Defendant STEVE MCMULLEN has, at all times material, been a resident of Kootenai County, State of Idaho and has been acting as and on behalf of HIGHLAND FINANCIAL, LLC.

3. Upon information and belief Defendant HIGHLAND FINANCIAL, LLC., is an Idaho Limited Liability Company and is the alter ego of STEVE MCMULLEN.

## II. Jurisdiction and Venue

4. Plaintiff incorporates paragraphs 1 and 3 as if fully set forth.

5. This Court has jurisdiction over the parties and the subject matter pursuant to I.C. § 5-514. Venue is proper in the First Judicial District, Kootenai County.

## III. General Allegations

6. Plaintiff incorporates paragraphs 1 through 5 as if fully set forth.

7. On or about December 18, 2007, Plaintiff entered into an agreement with Defendants to purchase an interest in his real property located in Bonner County, State of Idaho, known as the Providence Lake Property.

8. At all times relevant, the Providence Lake Property consisted of two parcels of property comprising 40.4 acres more or less, with each parcel being approximately 20 acres in size.

9. At the time of entering into the agreement, Plaintiff was the fee simple owner of the Providence Lake property, and was in default on the mortgage loans secured by the property.

10. Defendants advertised and held themselves out to be a company that could save property owners from foreclosure.

11. Plaintiff contacted Defendants after seeing their advertisement, to obtain assistance in saving the Providence Lake Property.

12. Defendants or their agents represented to Plaintiff that they could assist him with saving the equity in his property by buying an interest in the property, and stopping the foreclosure on the property. Defendants represented to

Plaintiff that Plaintiff would still have an interest in the property. Defendants further represented that they would aggressively market the property as necessary to sell it and obtain a price for the property that would assure Plaintiff received most of his equity, and guaranteed Plaintiff would receive a minimum of $50,000.

13. At the time Plaintiff contacted Defendants, Plaintiff had approximately $110,000 in equity in the 2 parcels.

14. Defendants prepared and presented to Plaintiff a series of documents, purportedly to effectuate the sale of an interest to Defendants. Those documents included a "contract for purchase and sale." Attached hereto as Exhibit A is a true and correct copy of the "Contract for Purchase and Sale" between Highland Financial, LLC and Plaintiff.

15. Pursuant to representations made by Defendants or their agents, Plaintiff believed that he would receive a guaranteed minimum of $50,000, or more, depending upon the re-sale price of the property by Defendants.

16. Defendants induced Plaintiff to sign several other documents of which Plaintiff did not understand the significance. Defendant did not explain to Plaintiff the purpose or significance of the documents.

17. Based upon Defendant's representations, Plaintiff believed the documents he was signing were necessary to the transaction. Such documents included, but were not limited to, a trust agreement, assignment of interest in trust, limited power of attorney and "deed" all in favor of Highland Financial, LLC. Plaintiff also signed and received a promissory note from Defendants. Copies of the trust, assignment, power of attorney, deed and promissory note are attached hereto as Exhibits B, C, D, E and F.

18. Defendants represented to Plaintiff that they would assume the loans for which Plaintiff was responsible, pay the loan and market the property for sale.

19. On or around March 7, 2008, Steve McMullen entered into a compensation agreement for the sale of the property with Century 21 Real Estate on the Lake. A copy of that Agreement is attached hereto as Exhibit G.

20. Subsequently, Defendants began pressuring Plaintiff to sign a new Warranty Deed to the Providence Lake Property that transferred all ownership by warranty deed from Plaintiff to the "Providence Lake Trust." Defendants threatened that if Plaintiff did not sign the new deed, that they would stop making payments on the loans that they had represented to Plaintiff that they had assumed.

21. Plaintiff refused to sign the new deed, and Defendants stopped making the payments on the loans. Plaintiff remained the named borrower on the loans at the time that the Defendants ceased making payments.

22. The Providence Lake Property was subsequently foreclosed.

#### IV. Violations of Title 48, Chapter 6, Idaho Consumer Protection Act

22. Plaintiff incorporates paragraphs 1 – 21 as if fully set forth.

23. Defendants engaged in an unfair or deceptive act or practice in the conduct of the transaction with Plaintiff in violation of I.C. 48-603(2) by causing likelihood of confusion or of misunderstanding as to the source, sponsorship,

approval or certification of the services Defendants claimed they were providing to Plaintiff.

24. Defendants engaged in an unfair or deceptive act or practice in the conduct of the transaction with Plaintiff in violation of I.C. 48-603(5), by representing that the services Defendants claimed to be providing to Plaintiff had benefits that they did not have—namely to save Plaintiff from foreclosure and that Plaintiff would receive money for the sale of the Providence Lake Property by Defendants.

25. Defendants engaged in an unfair or deceptive act or practice in the conduct of the transaction with Plaintiff in violation of I.C. 48-603(5) by representing to Plaintiff that Defendant Steve McMullen had sponsorship, approval, status, affiliation, connection, qualifications or license that he did not have.

26. Defendants engaged in an unfair or deceptive act or practice in the conduct of the transaction with Plaintiff in violation of I.C. 48-603(9) by advertising their services with intent not to sell them as advertised.

27. Defendants engaged in an unfair or deceptive act or practice in the conduct of the transaction with Plaintiff in violation of I.C. 48-603(17), by engaging in acts and practices which were misleading, false or deceptive to Plaintiff.

28. Defendants engaged in an unfair or deceptive act or practice in the conduct of the transaction with Plaintiff in violation of I.C. 48-603(18) by engaging in an unconscionable method, act or practice in the conduct of their trade or commerce by inducing Plaintiff to enter into a series of transactions that were excessively one-sided in favor of Defendants.

29. Defendants engaged in an unfair or deceptive act or practice in the conduct of the transaction with Plaintiff in violation of I.C. 48-603(18) by engaging in conduct or a pattern of conduct that outrages or offends the public conscience.

### IV. Breach of Implied-in-Law Contract

30. Plaintiff incorporates paragraphs 1 through 29 as if fully set forth herein.

31. Defendant promised to pay to Plaintiff a minimum of $50,000 for his interest in the Providence Lake Property, and to save the property from foreclosure.

32. Defendant failed to pay Plaintiff a minimum payment of $50,000, and did not save the Plaintiff's property from foreclosure.

33. As a result of Defendant's breach of his promises to Plaintiff, Plaintiff has been injured in an amount to be proved at trial, but not less than $10,000.

All of the above allegations were admitted by the Defendants as being true because they did not file answers denying them. No evidence was necessary to support them. The district court initially recognized that Mr. Pierce was not required to prove liability on his claims as

9

shown by the court's statement at the beginning of the trial that "the plaintiff prevails on their claims." Mr. Pierce then put on evidence to establish the amount of his damages, and the district court took the matter under advisement. Inexplicably, the district court later issued an opinion holding that Mr. Pierce's amended complaint must be dismissed because he had failed to prove liability on any of his claims. Because the allegations were not denied, he was not required to do so. Therefore, the district court erred in holding that Mr. Pierce had failed to prove liability.

**b. The lack of law supporting Mr. Pierce's claims.** Mr. Pierce had one cause of action against the Defendants, but he alleged several theories of liability. One theory was breach of contract, and others were violations of various parts of the Idaho Consumer Protection Act. He need only recover on one theory. In its memorandum opinion, the district court held that Mr. Pierce was unable to recover for breach of contract or for violation of the Idaho Consumer Protection Act. The court erred in both respects.

*i. Breach of contract claim.* The district court held that Mr. Pierce could not recover for breach of contract. The court stated that Mr. Pierce abandoned his claim titled "Breach of Implied-in-Law Contract" because he did not mention it in his trial brief and he failed to allege a common-law breach of contract claim in his amended complaint. In both respects, the district court erred.

An implied-in-law contract is synonymous with unjust enrichment. *Kennedy v. Forest*, 129 Idaho 584, 587, 930 P.2d 1026, 1029 (1997). The allegations under the title "Breach of Implied-in-Law Contract" do not support a claim for unjust enrichment. However, that is not controlling. The title was obviously in error.

"The Idaho Rules of Civil Procedure establish a system of notice pleading." *Cook v. Skyline Corp.*, 135 Idaho 26, 33, 13 P.3d 857, 864 (2000). "A complaint need only contain a concise statement of the facts constituting the cause of action and a demand for relief." *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986). "Under notice pleading, 'a party is no longer slavishly bound to stating particular theories in its pleadings.'" *Seiniger Law Office, P.A. v. North Pacific Ins. Co.*, 145 Idaho 241, 246, 178 P.3d 606, 611 (2008). The fact that Mr. Pierce mislabeled the theory as an implied-in-law contract is not controlling. "[E]ven if a complaint does not specifically state a given cause of action, it can satisfy the pleading requirement so long as the factual allegations themselves could fairly put the opposing party on

10

notice of the claim against it." *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 443, 235 P.3d 387, 393 (2010).

In his amended complaint, Mr. Pierce alleged:

30.     Plaintiff incorporates paragraphs 1 through 29 as if fully set forth herein.

31.     Defendant promised to pay to Plaintiff a minimum of $50,000 for his interest in the Providence Lake Property, and to save the property from foreclosure.

32.     Defendant failed to pay Plaintiff a minimum payment of $50,000, and did not save the Plaintiff's property from foreclosure.

33.     As a result of Defendant's breach of his promises to Plaintiff, Plaintiff has been injured in an amount to be proved at trial, but not less than $10,000.

These allegations allege a breach of contract, and Mr. Pierce argued for recovery based upon breach of contract in his trial brief. Therefore, the district court erred in holding that Mr. Pierce failed to allege a claim for breach of contract in the amended complaint and that he abandoned that claim by failing to discuss it in his trial brief. The Defendants did not deny the allegations for breach of contract, and therefore they were deemed as true. They establish that the Defendants breached their contract with Mr. Pierce, for which he is entitled to recover damages. The only issue was the amount of damages.

*ii.  Violation of the Idaho Consumer Protection Act.* The amended complaint alleged various violations of the Idaho Consumer Protection Act, I.C. §§ 48-601 to 48-619. The district court held that Mr. Pierce was unable to recover under that Act because he "was not 'any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money . . . as a result of the use or employment by another person of a method, act or practice declared unlawful by this act.' Pierce purchased nothing." In holding that the allegations in the amended complaint did not allege that Mr. Pierce did not purchase any services from Defendant, the district court erred.

"The Idaho Consumer Protection Act indicates a legislative intent to deter deceptive or unfair trade practices and to provide relief for consumers exposed to proscribed practices." *State ex rel. Kidwell v. Master Distrib., Inc.*, 101 Idaho 447, 455, 615 P.2d 116, 124 (1980). "[T]he Act [must] be liberally construed to effect the legislative intent." *In re Western Acceptance Corp., Inc.*, 117 Idaho 399, 401, 788 P.2d 214, 216 (1990).

11

Mr. Pierce alleged violations of subsections (2), (5), (9), (17), and (18) of Idaho Code section 48-603. All of those subsections prohibit specified conduct in connection with goods or services. The word "services" means "work, labor or any other act or practice provided or performed by a seller to or on behalf of a consumer." I.C. § 48-602(7). The district court narrowly construed the transaction between Mr. Pierce and the Defendants as merely the Defendants purchasing Mr. Pierce's real property. In doing so, the court erred. The transaction between Mr. Pierce and the Defendants consisted of the Defendants offering their services in saving Mr. Pierce's property from foreclosure. The manner in which they would do so was set forth by Mr. Pierce in his amended complaint as follows:

10. Defendants advertised and held themselves out to be a company that could save property owners from foreclosure.

11. Plaintiff contacted Defendants after seeing their advertisement, to obtain assistance in saving the Providence Lake Property.

12. Defendants or their agents represented to Plaintiff that they could assist him with saving the equity in his property by buying an interest in the property, and stopping the foreclosure on the property. Defendants represented to Plaintiff that Plaintiff would still have an interest in the property. Defendants further represented that they would aggressively market the property as necessary to sell it and obtain a price for the property that would assure Plaintiff received most of his equity, and guaranteed Plaintiff would receive a minimum of $50,000.

13. At the time Plaintiff contacted Defendants, Plaintiff had approximately $110,000 in equity in the 2 parcels.

14. Defendants prepared and presented to Plaintiff a series of documents, purportedly to effectuate the sale of an interest to Defendants. Those documents included a "contract for purchase and sale." . . . .

15. Pursuant to representations made by Defendants or their agents, Plaintiff believed that he would receive a guaranteed minimum of $50,000, or more, depending upon the re-sale price of the property by Defendants.

16. Defendants induced Plaintiff to sign several other documents of which Plaintiff did not understand the significance. Defendant did not explain to Plaintiff the purpose or significance of the documents.

17. Based upon Defendant's representations, Plaintiff believed the documents he was signing were necessary to the transaction. Such documents included, but were not limited to, a trust agreement, assignment of interest in trust, limited power of attorney and "deed" all in favor of Highland Financial, LLC. Plaintiff also signed and received a promissory note from Defendants. . . . .

12

18. Defendants represented to Plaintiff that they would assume the loans for which Plaintiff was responsible, pay the loan and market the property for sale.

The above-stated allegations are established facts because they were not denied by the Defendants. The transaction was not the sale of real property to the Defendants. The transfer of Mr. Pierce's real property into the trust was simply a means by which the Defendants claimed that they would save Mr. Pierce's property from foreclosure and allow him to recover some of the equity in his property. He was paying for their services to do so. Therefore, the district court erred in holding that the transaction did not involve the purchase of services by Mr. Pierce.

## III.
### Determination of Damages.

Pursuant to the undisputed facts, the Defendants guaranteed that Mr. Pierce would receive a minimum of $50,000 from the transaction. He is entitled to a judgment of at least that amount. Because the district court did not address the issue of damages, this case must be remanded for it to determine whether Mr. Pierce is entitled to receive more than $50,000 in damages. That determination is to be made based upon the evidence presented at the trial that was held on June 18, 2012.

## IV.
### Is Mr. Pierce Entitled to an Award of Attorney Fees on Appeal?

Mr. Pierce seeks an award of attorney fees on appeal pursuant to Idaho Code § 48-608. That statute provides for the awarding of reasonable attorney fees to the prevailing plaintiff who brought an action to recover actual damages as a result of suffering an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by the Idaho Consumer Protection Act. I.C. § 48-608(1) & (5). Pursuant to the allegations that were admitted by the Defendants, they engaged in an act or practice declared unlawful by the Act which caused ascertainable damages to Mr. Pierce. He is the prevailing party on appeal. Therefore, he is entitled to an award of attorney fees on appeal. He will also be the prevailing party in the district court, and he can submit a

memorandum of costs there once there is a final determination of the amount of damages to which he is entitled.

## V.
### Conclusion.

We reverse the judgment of the district court and remand this case for further proceedings that are consistent with this opinion.  We award appellant costs and attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**